639 A.2d 443

COMMONWEALTH of Pennsylvania, Appellee,

v.

Lawrence QUEEN, Appellant.

Supreme Court of Pennsylvania.

Argued Dec. 6, 1993.

Decided March 24, 1994.

316

---

John W. Packel, and Sarah Kerr, Philadelphia, for L. Queen.

Catherine Marshall, and Peter J. Gardner, Philadelphia, for Com.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

### OPINION

ZAPPALA, Justice.

We granted Appellant's Petition for Allowance of Appeal to consider his argument that the evidence presented by the Commonwealth at his suppression hearing was insufficient to support the search of his person and the seizure of his firearm.[1] Appellant bases his argument on the failure of the Commonwealth to present testimony from the detective who arguably had knowledge of articulable facts to support a reasonable suspicion that Appellant was involved in a robbery. Instead, the Commonwealth presented testimony of the police officer to whom the detective indicated his belief that Appellant resembled a robbery suspect. Thus, no evidence was presented as to the basis for the detective's belief.

On January 30, 1990, at 1:30 p.m., Officer Bryant of the Philadelphia Police Department received a police radio request that detectives needed a uniformed police officer for backup. When Officer Bryant arrived on the scene, he observed the Appellant behind the wheel of a vehicle and another man sitting on the passenger side. Three detectives were also present, standing near their vehicle, which was parked behind Appellant's vehicle.

1. In its brief, the Commonwealth argues that a "seizure" never occurred; therefore, the protections afforded by the Fourth Amendment of the United States Constitution and Article I, Section 8, of the Pennsylvania Constitution are not implicated. We have reviewed the testimony of Officer Bryant and the Appellant and are satisfied that a "seizure" occurred. It seems incredible for the Commonwealth to argue that a reasonable person would believe that a citizen could move his vehicle when three city detectives are standing at the rear of his car. *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), (Opinion Announcing Judgment of the Court per Stewart, J.) At a minimum, the Commonwealth should have elicited testimony from Appellant at the suppression hearing to support its theory that he was free to leave. We will not assume evidence not in the record. Therefore, there is no merit to this argument.

Detective Mango then approached Officer Bryant and stated that Appellant resembled a male wanted for robbery. Officer Bryant then approached Appellant's vehicle and asked Appellant and the unidentified male to step out of the vehicle. When Appellant stepped out of his car, his coat was open and Officer Bryant observed a protruding bulge in his shirt. Believing that Appellant possessed a weapon, Officer Bryant frisked him and found a loaded .380 semi-automatic weapon. Being unable to produce a license, Appellant was arrested for carrying a firearm without a license and carrying a firearm on a public street in violation of Sections 6106 and 6108 of the Uniform Firearm Act, 18 Pa.C.S. § 6106 and 6108.[2]

On the day of trial, Appellant requested that the Municipal Court judge suppress the seizure of his weapon on the basis that the search violated federal and state constitutional rights.[3] After taking testimony from Officer Bryant and Appellant, the Municipal Court denied the Motion for Suppression. Appellant was thereafter convicted of the firearm violations and sentenced to six months of reporting probation for each violation, the sentences to run concurrently, and the payment of court costs. Appellant then filed a timely Petition for Writ of Certiorari in Common Pleas Court. That court denied the petition, finding that Officer Bryant had reasonable suspicion to stop and frisk Appellant as well as probable cause to arrest him. Superior Court affirmed, 423 Pa.Super. 638, 616 A.2d 718, and we granted allocatur.

■ Our scope of review in evaluating a lower court's refusal to suppress evidence is as follows:

2. Although Appellant's version of the events differs from Officer Bryant's testimony, we are bound to accept Officer Bryant's testimony. See *Commonwealth v. Cortez*, 507 Pa. 529, 491 A.2d 111 (1985).

3. Since no reproduced record was filed, we reviewed the actual record and could not find the suppression motion. It appears from reading the Notes of Testimony that on the day of trial Appellant *orally* requested suppression. Since neither the trial court nor the Commonwealth objected, we will consider the issue involved. However, we strongly discourage the use of an oral motion to suppress and may not look favorably on its use in the future.

When we review the ruling of a suppression court we must determine whether the factual findings are supported by the record. When it is a defendant who has appealed, we must consider only the evidence of the prosecution and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. Assuming that there is support in the record, we are bound by the facts as are found and we may reverse the suppression court only if the legal conclusions drawn from those facts are in error. (Citations omitted.)

*Commonwealth v. Cortez*, 507 Pa. at 532, 491 A.2d at 112. Thus, if sufficient evidence is of record to support the suppression court's ruling and that court has not misapplied the law, we will not substitute our credibility determination for that of the suppression court judge. However, if the record does not support the suppression court or the court misapplies the law, we must reverse that court's determination.

 The issue for which we granted appeal requires us to determine whether Detective Mango's testimony was necessary to support the search of Appellant. Because we conclude that his testimony was essential, we must reverse and grant Appellant a new trial.

In *United States v. Hensley*, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985), the defendant was arrested by one police department on the basis of a "wanted flyer" issued by another police department. After defendant was arrested for firearm violations, he moved to suppress his handguns on the grounds that his stop violated the Fourth Amendment.

In upholding the district court's refusal to suppress the handguns, the Supreme Court relied, in part, upon its prior holding in *Whiteley v. Warden*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). In *Whiteley*, the Supreme Court concluded that evidence uncovered during a search incident to an arrest upon reliance of a flyer is permissible so long as the officer who issued the flyer possessed probable cause to arrest. It is irrelevant as to whether the arresting officers have the specific facts which led the issuing officer to conclude

that probable cause existed so long as the issuing officer has the necessary articulable facts.

Applying the *Whiteley* analysis in *Hensley,* the Supreme Court stated:

> We conclude that, if a flyer or bulletin has been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense, then reliance on that flyer or bulletin justifies a stop to check identification ... to pose questions to the person, or to detain the person briefly while attempting to obtain further information.
>
> \* \* \* \* \* \*
>
> If the flyer has been issued in the absence of a reasonable suspicion, then a stop in the objective reliance upon it violates the Fourth Amendment.
>
> \* \* \* \* \* \*
>
> Assuming the police make a Terry stop in objective reliance on a flyer or bulletin, we hold that the evidence uncovered in the course of the stop is admissible if the police who issued the flyer or bulletin possessed a reasonable suspicion justifying a stop....

469 U.S. at 232–233, 105 S.Ct. at 682. (Citations omitted.)

The rationale of *Whiteley* and *Hensley* clearly supports the proposition that a stop and frisk may be supported by a police radio bulletin *only* if evidence is offered at the suppression hearing establishing the articulable facts which support the reasonable suspicion. To hold otherwise would permit the government to bypass the protections of the Fourth Amendment and Article I, Section 8, of the Pennsylvania Constitution by always having a second police officer summoned for assistance for the purpose of making the inquiry of a suspect on the basis of an initial police officer's suspicion. At no time would the government have to establish any articulable facts, thus completely emasculating the protections against illegal searches and seizures.

Applying the above principles to this record, it is clear that the suppression court erred in refusing to suppress Appellant's weapon. The suppression court assumed that Detective Mango possessed the required facts to conduct an investigatory stop. At the suppression hearing, Officer Bryant testified that Detective Mango did not tell him any of the pertinent facts from which Detective Mango concluded that Appellant was a suspected robber, only that Detective Mango believed he was. Therefore, the suppression court did not have a description of the robbery suspect or the circumstances surrounding the robbery. Without any such information, the suppression court was required to speculate as to whether Officer Bryant had sufficient facts to establish a reasonable suspicion. Such action clearly violates both the Fourth Amendment of the United States Constitution and Article I, Section 8, of the Pennsylvania Constitution.[4]

Accordingly, the Order of the Superior Court is reversed, Appellant's Motion for Suppression is granted, and the matter is remanded to the Court of Common Pleas of Philadelphia County for a new trial.

LARSEN, J., did not participate in the consideration or decision of this case.

MONTEMURO, J., who was an appointed Justice of the Court at the time of argument, participated in the decision of this case in his capacity as a Senior Justice.

---

4. In *Commonwealth v. Kenney*, 449 Pa. 562, 297 A.2d 794 (1972), we adopted the rationale of *Whiteley v. Warden*, supra. In *Kenney*, we approved a warrantless arrest by a detective without any knowledge to support probable cause undertaken at the direction of his superior who had sufficient knowledge of facts and circumstances to constitute probable cause to arrest the defendant. Therefore, *Kenney* supports the conclusion we reach today.