**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**John W. SPENCER, Appellant.**

Superior Court of Pennsylvania.

Argued Aug. 30, 2005.

Filed Nov. 14, 2005.

---

Joseph P. Green, Jr., West Chester, for appellant.

Peter Hobart, Asst. Dist. Atty., West Chester, for Com., appellant.

BEFORE: KLEIN, PANELLA and KELLY, JJ.

OPINION BY KLEIN, J.:

¶ 1 John W. Spencer appeals from the judgment of sentence entered against him in the Court of Common Pleas of Chester County on December 31, 2004 after being found guilty of driving under the influence (DUI). Spencer appeals claiming the trial court erred in denying his motion to suppress and also claims the Motor Vehicle Code does not require the use of a turn signal when merely changing lanes. We affirm.

¶ 2 The police action in stopping the car and discovering that Spencer was intoxicated rested on a call from a *named* source in a telephone call that turned out to be Spencer's estranged wife. She phoned the police and told the operator Spencer was coming from a bar and was staggering when he got into the car. Hence the car stop. At trial Spencer's wife said she had lied when she told police Spencer was staggering. Whether what she said was true or not is irrelevant. The purpose of the exclusionary rule is to deter police misconduct and protect citizens' privacy from improper police activity, not citizen misconduct if the citizen is not an agent of the police. On the basis of the information from a named informant, the police were justified in making a car stop. Hence we need not reach the issue as to whether it was appropriate to stop a car because Spencer changed lanes without using a turn signal.

¶ 3 A full discussion follows.

**Facts**

¶ 4 At approximately 7:02 p.m. on April 12, 2003, Julie Spencer called 911 and reported seeing a white male exit a bar and stagger down the sidewalk. The male got into a red Ford 150 pickup truck and drove westbound on West Lancaster Avenue. Spencer also told the 911 operator the license plate number of the truck. Spencer identified herself to the 911 operator and also identified the vantage point from which she observed the behavior. What Julie Spencer did not tell the 911 operator was the fact she was the estranged wife of the man she saw leaving the bar.

¶ 5 Shortly thereafter, Police Officer Faul of the Cain Township Police Department saw the red pickup truck approach him from the opposite direction. After the pickup truck passed Officer Faul he turned his police cruiser around and followed the vehicle. He confirmed the license plate on the truck as matching the one reported to 911. Although the truck did not weave or exhibit any other similar sign of erratic driving, the truck did change lanes without signaling. Officer Faul contacted Police Officer Fentner of the Downingtown Police by radio and told her he was behind the truck in question and had witnessed what he believed was a violation of 75 Pa.C.S. § 3334 (changing lanes without signaling).

Officer Fentner asked Officer Faul to pull the vehicle over, which he did. Officer Fentner arrived on the scene in under a minute.

¶ 6 After Officer Fentner approached the truck, she smelled alcohol on the driver, John Spencer. She then administered several field sobriety tests to Spencer, three of which he failed. Spencer was arrested for DUI. Subsequently it was determined he had a blood alcohol level of .16.

¶ 7 Although the information regarding Julie Spencer was on Officer Fentner's computer screen, the officer did not specifically know the identity of the original complaining witness.

¶ 8 Spencer filed a motion to suppress, claiming the police did not have probable cause to stop Spencer. A hearing was held on the motion on September 24, 2003. Both Officers Faul and Fentner testified at that hearing. Julie Spencer, although available to testify, was not called by either the Commonwealth or Spencer. At no time during the hearing or in his subsequently filed memorandum in support of the motion to suppress did Spencer claim the Commonwealth was obliged to present Julie Spencer.

¶ 9 The trial court ultimately denied the motion to suppress and on May 13, 2004, Spencer was tried on the DUI charge. The notes of testimony from the suppression hearing were incorporated into the trial, and Officer Fentner testified again for the Commonwealth. Julie Spencer testified for her husband.[1] Julie Spencer testified while she had seen her husband leave the bar and walk to his truck, she did not see him stagger. Spencer's counsel admitted the substance of this testimony was known at the time of the suppression hearing but was not presented. The sole purpose of Julie Spencer's testimony was to challenge the Commonwealth's contention Spencer was incapable of driving safely and was not under the influence.

¶ 10 Spencer was subsequently convicted by the trial judge of DUI.

¶ 11 Spencer now raises three issues on appeal: the trial court erred in concluding that a 911 call from a person not called as a pretrial witness should be treated as a call from an identified informant, particularly where that informant admits the 911 call contained false information; the trial court erred in refusing to consider false statement charges filed against Julie Spencer; and the trial court erred in concluding Spencer had violated 75 Pa.C.S. § 3334, because a lane change is not included as "turn" within the meaning of the statute.

**1. Claim that the Court erred in concluding that a 911 call from a person not called as a pretrial witness should be treated as a call from an anonymous informant, particularly where that informant admits that the 911 call contained false statements.**

**A. An identified caller need not testify, and failure to testify does not make the caller "anonymous."**

¶ 12 There is a reason an identified caller is considered reliable where an anonymous caller is not. That is because if the caller is named, and the information turns out to be false, the caller is subject to prosecution for filing a false police report. Therefore, Spencer's argument fails.

¶ 13 Spencer argues the 911 caller, his wife, needed to testify at the suppression hearing in order for the call to be considered as coming from an identified source. Because she did not testify, Spencer claims the tip must be considered to be anony-

---

1. They were no longer estranged.

mous. If the tip is considered to be from an anonymous source then it did not provide sufficient information to be considered reliable and so cannot provide probable cause.

¶ 14 Unfortunately for Spencer, the case law he cites does not support this proposition. In *Commonwealth v. Stevenson*, 832 A.2d 1123 (Pa.Super.2003), police responded to a "BOLO" (be on the lookout) radio broadcast. Additionally, other police officers suspected the vehicle in question to be involved in narcotics. These two bases were insufficient to support probable cause: the BOLO was based on years old information the driver had a suspended license and the report of narcotics involvement did not contain any specific information. Without bringing in the narcotics officer who issued the warning, the suppression court had no idea what the basis for the report was and so probable cause could not be supported. Similarly, in *Commonwealth v. Queen*, 536 Pa. 315, 639 A.2d 443 (1994), a detective told a police officer the defendant was a suspected robber. That was the only information given to the police officer. The officer stopped and searched the defendant and found a firearm in the defendant's possession. Suppression of the firearm was mandated because the mere statement the defendant was a robbery suspect carried no indicia of reliability. The detective who told the police officer Queen was a robbery suspect was required to testify to the basis of the suspicion.

¶ 15 Neither of these cases stands for the broad assertion that the Commonwealth is automatically required to call as a witness the original source of information.

¶ 16 Additionally, *Queen* implies that had the police officer been able to testify to specific information relayed to him by the detective, the officer's testimony would have been sufficient. "At the suppression hearing, Officer Bryant testified that Detective Mango did not tell him any of the pertinent facts from which Detective Mango concluded that Appellant was a suspected robber, only that Detective Mango believed he was. Therefore, the suppression court did not have a description of the robbery suspect or the circumstances surrounding the robbery." *Id.* at 445–46.

¶ 17 More to the present point, we find *Commonwealth v. Korenkiewicz*, 743 A.2d 958 (Pa.Super.1999) (*en banc*), to be instructive. In *Korenkiewicz*, a divided *en banc* panel of our Court found a police officer had probable cause to stop a vehicle based upon a 911 call from an identified source, that said there was "a person in the parking lot that was either ill or intoxicated" and the caller was afraid the car was about to re-enter traffic.

¶ 18 The 911 caller was produced at the suppression hearing in *Korenkiewicz*, thereby providing the basis for the conclusion the defendant was drunk. Without this testimony, the court would have been faced with a *Queen* situation. As noted, the *Queen* decision does not require the original supplier of information be called to testify as long as the required information is presented. Had the 911 caller in *Korenkiewicz* provided the details of suspicions to the police when he called, this would be sufficient.

¶ 19 In his dissent in *Korenkiewicz*, Judge Johnson stated he believed the officer did not have sufficient information at the time of the stop to support probable cause. The only information the police officer had at the time of the stop was that an identified caller asserted a motor vehicle operator may be drunk. It was irrelevant to Judge Johnson that the 911 caller testified at the suppression hearing because that was after the fact information.

¶ 20 If we look at *Queen* and both the majority and dissent in *Korenkiewicz*, we find the fact pattern presented here addresses all the concerns. *Queen* required suppression because the tip alone provided no details; had the police officer been able to supply those details, the evidence would have been allowed. In the *Korenkiewicz* majority, the tip along with the detail provided in the suppression hearing was sufficient. The *Korenkiewicz* dissent would require the information to be present at the time of the stop.

¶ 21 Here, Julie Spencer did provide the 911 operator with sufficient background information to support probable cause. Julie Spencer identified herself to the police in reporting the tip. This is vitally important as it provides its own indicia of reliability. *See Commonwealth v. Swartz*, 787 A.2d 1021 (Pa.Super.2001) (tip from informer known to police may carry enough indicia of reliability to conduct investigatory stop, even where same tip from anonymous source would likely not have done so); *Commonwealth v. Hayward*, 756 A.2d 23, 36 (Pa.Super.2000) ("Identified citizens who report their observations of criminal activity to police are assumed to be trustworthy in the absence of special circumstances."). Julie Spencer also reported specifically what she had seen: a white male exiting a bar and staggering toward his vehicle. She reported he got into the vehicle, a red Ford 150 pickup truck, and drove west bound on Lancaster Avenue. She also gave the police the tag number of the vehicle. We also note: "Established Pennsylvania law generally accepts that intoxication is a condition within the understanding or powers of observation of ordinary citizens." *Korenkiewicz* at 964. This information,

known to the police at the time of the stop, provided probable cause.

**B. The court erred in refusing to consider the Commonwealth's criminal false statement charges filed against a 911 caller who admits that her 911 call contained maliciously false statements.**

¶ 22 First, it is irrelevant to the issue of suppression whether or not the 911 call was true or false. When considering suppression, the issue is police wrongdoing. Unless the police had some way of realizing that a named, 911 caller was lying, they had an obligation to follow up on the call. Therefore, the police were *required* to investigate the information and certainly should not be required to suppress the evidence because the 911 caller was not telling the truth.

¶ 23 Pennsylvania case law is sparse on the issue of incorrect information supplied by an informant. There is no case law we can find on incorrect information presented to the police pertaining to a warrantless automobile stop. By analogy, we look to case law regarding suppression of evidence obtained by warrant. In that instance, case law is universal in examining not what the informant said, but what the affiant obtaining the search warrant said. If the affiant, generally a police officer, makes a deliberate material misstatement or makes statements with a reckless disregard for the truth, then a search warrant must fail. This is based on both the United States Constitution and the Pennsylvania Constitution.[2] Nonetheless, both protections are offered citizens to help prevent improper behavior by the government.

---

2. The main thrust of protection offered by the U.S. Constitution is to prevent police misconduct. The Pennsylvania Constitution affords that protection as well as a heightened protection of the privacy of the individual.

Nevertheless, both the fourth amendment and article 1, section 8 were designed to serve the same vital function—to prevent government officials from unjustifiably invading the privacy of individuals. Thus, both the state and federal constitutional limitations on "unreasonable searches and seizures" apply exclusively to the conduct of persons who are acting as instruments or agents of the state.

*Commonwealth v. Kean*, 382 Pa.Super. 587, 556 A.2d 374, 378 (1989). The concurring opinion of Justice Nix in *Commonwealth v. Hall*, 451 Pa. 201, 302 A.2d 342 (1973), is also informative:

Perjury by an informant where police are unaware of the falsehood and had a reasonable basis to believe the information received presents an entirely different situation and in my judgment should not be controlled by this decision or the decision in *Commonwealth v. D'Angelo*, 437 Pa. 331, 263 A.2d 441 (1970.)

*Hall* at 210, fn. 5, 302 A.2d 342.[3]

¶ 24 Thus, the correct focus of inquiry is not on what Spencer said, but on the reasonableness of the police in relying on what Spencer said. As noted, it was reasonable for the police to rely upon the information Spencer provided.

¶ 25 Even were that not the case, Julie Spencer was available to Spencer to testify at the suppression hearing, and therefore her testimony should have been presented then. Even were there legal merit to the claim that her call to the police contained false information, that claim was waived. Spencer's counsel specifically waived the use of her testimony to show lack of proba-

ble cause for the car stop and instead only offered it to attempt to show Spencer was capable of safely driving a car.

¶ 26 As noted, Julie Spencer was not called to testify during the suppression hearing. Her testimony was not offered at trial for any purpose relevant to the suppression of evidence. It was admitted at trial that Julie Spencer's testimony was known to Spencer at the time of the suppression hearing and Julie Spencer was available. Her testimony at trial was offered only to rebut the Commonwealth's evidence that Spencer was intoxicated. That Julie Spencer may have been charged with making a false statement to the police[4] is irrelevant to the trial evidence. It may well have had relevance to suppression issues, but her testimony was never offered or considered in relation to any suppression issue.

■ ¶ 27 We will look at the second part of this allegation first. At the trial, Spencer specifically denied the testimony of his wife was being elicited to challenge the validity of the stop or as an effort to relitigate the suppression motion.

Mr. Green (defense counsel): I'm going to elicit her testimony that, in fact, she didn't have any indications, any observable indications that he was under the influence.

The Court: For what purpose?

Green: To show he was not under the influence. He's charged with being incapable of safe driving.

N.T., 5/13/04, p. 10.

Court: We are not re-litigating the suppression issue.

---

**3.** Both *Hall* and *D'Angelo*, referred to by Justice Nix, dealt with the ability of a defendant to challenge the veracity of the affiant and the reasonableness of the affiant's reliance on the information supplied.

**4.** The official record in this matter contains no evidence that such charges were filed. The trial court indicates in its Rule 1925(a) opinion that charges were filed with a district justice, but we have no confirmation of that.

Green: We are not, although we are making a record for appeal.

Court: No, not here. The time to make a record for appeal was at the time of the suppression. This is not newly discovered evidence.

Green: At the trial of the case I intend to make a record that will be used on appeal from the judgment of sentence.

Court: But the wife's testimony was available at the time of the suppression hearing.

Green: It was unavailable, but it was known.

Court: It was as available as it is now.

Green: That's correct.

Court: So there is no making a record to bolster the suppression record at trial.

Green: I understand that. If it's not relevant for a trial issue, it's not relevant, I understand that, but the Commonwealth alleges that the defendant on the date and time in question was incapable of safe driving. And, traditionally, what's relevant is evidence of balance and coordination. That's what the police testify to in every case. I have a witness who made observations of the defendant at the relevant time who will testify that there were no impairments of balance or coordination.

*Id.* at 11–12.

¶ 28 It is abundantly clear from this exchange that Julie Spencer's testimony was not pointed to the issue of suppression. Linking her testimony now to the suppression issue is an attempt to back-door evidence on appeal that should have been presented at the suppression hearing.[5] Here, counsel admitted that the evidence in question was both known and available at the time of the suppression hearing. Counsel had an obligation to present the evidence at that time for that evidence to be considered for purposes of suppression.

¶ 29 Julie Spencer testified at trial that she did not see her husband stagger to his truck. She made a prior inconsistent statement that she had seen him stagger. Even accepting her trial testimony as true for the purpose offered, it simply makes no difference at all that she was charged with making a false statement. Her trial testimony obviously did not trump the Commonwealth's evidence that Spencer failed three field sobriety tests and had a .16 BAC.

¶ 30 Julie Spencer's testimony was offered solely to oppose the Commonwealth's evidence that tended to show Spencer was intoxicated. As such, we cannot consider that testimony in reviewing the suppression issue.

C. **The court erred in concluding that the Commonwealth had established probable cause to conclude that the defendant violated Section 3334, Turning Movements, because a lane change is not included within a "turn" within the meaning of Section 3334.**

¶ 31 Because we have determined probable cause existed independent of this issue, we need not reach the merits of this claim.

¶ 32 Judgment of sentence affirmed.

---

5. In general, a defendant is allowed only one attempt at suppressing evidence. Pa. R.Crim.P. 581(J) states: "If the court determines that the evidence shall not be suppressed, such determination shall be final, conclusive and binding at trial, except upon a showing of evidence which was theretofore unavailable, but nothing herein shall prevent a defendant from opposing such evidence at trial upon any ground except its suppressability."