J-S58026-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| MARCIAL ANTON COOPER, II | |
| Appellant | No. 244 MDA 2016 |

Appeal from the Judgment of Sentence February 4, 2016
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s): CP-36-CR-0001419-2015

BEFORE:  GANTMAN, P.J., BOWES AND PLATT,* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED NOVEMBER 29, 2016**

Marcial Anton Cooper, II appeals from the judgment of sentence imposed following his conviction for the sole count of delivery of a controlled substance.  We affirm.

The following facts were adduced at trial.  Trooper Noel Velez, a member of the Vice Unit of Pennsylvania State Police Troop J, utilized a female confidential informant (hereinafter "CI"), to arrange for the purchase of an ounce of cocaine.  N.T., 12/14/15, at 63.  The operation was conducted on January 31, 2013, at approximately 5:00 p.m.  *Id*. at 95.  On that date, the CI informed Trooper Velez that an individual known to the CI only as "Juan" agreed to sell her cocaine in a Wal-Mart parking lot.  *Id*. at 67.  Trooper Velez, along with Corporal John Comerford, proceeded to the

_____

* Retired Senior Judge assigned to the Superior Court.

area. The CI, who was driving her own vehicle, met the officers in a parking lot across from the Wal-Mart. Trooper Velez conducted the controlled buy procedure and gave the CI $800. She then proceeded to the Wal-mart parking lot. *Id*. at 71.

Trooper Velez followed the CI's vehicle and maintained visual contact. He observed her vehicle as she parked next to a silver, four-door vehicle. The officer parked where he could see through the target vehicle's windshield. The CI exited her vehicle, approached the silver car, and entered the passenger seat. Trooper Velez observed the CI and the driver, later identified as Appellant, having a brief conversation. Appellant and the CI exchanged unidentified items. *Id*. at 67-69.

Following the transaction, the CI returned to her vehicle and Appellant immediately exited the parking lot. Trooper Velez wrote down the license plate and contacted Corporal Comerford, who was in a separate vehicle and parked nearby. *Id*. at 70-71; 109. He related everything he had just observed, and described Appellant's vehicle and its license plate. *Id*. at 70-71. The corporal began to follow Appellant's vehicle and the two cars merged onto a highway.

Meanwhile, the CI returned to the original meeting location across the street. She handed Trooper Velez a plastic bag of white powder, which was determined to contain 28.7 grams of cocaine. *Id*. at 135.

Since the authorities did not know Appellant's name, Trooper Travis Martin, who was part of the police operation and waiting on the highway, was instructed to stop the vehicle. Following the drug sale, Corporal Comerford called Trooper Martin and told him the sale had been completed, and described the seller's vehicle, including its license plate number. Trooper Martin stopped the vehicle, obtained Appellant's driver's license and information, and allowed him to leave. *Id*. at 127-129. The plan was to continue the investigation, but the CI was unable to make further contact with Appellant. *Id*. at 78.

On December 14, 2015, Appellant was found guilty of delivery of a controlled substance. He was sentenced on February 4, 2016, to a period of one year less one day to two years less one day incarceration. Appellant timely filed a notice of appeal, and complied with the trial court's order to prepare a Pa.R.A.P. 1925(b) statement. The trial court issued an opinion on April 5, 2016. The matter is now ready for our review. Appellant raises two issues for our consideration.

> I.    Whether the trial court erred in denying Appellant's motion to suppress the identification of the Appellant following a traffic stop conducted by Trooper Martin as the Commonwealth failed to offer evidence at the pre-trial hearing to establish articulable facts to support reasonable suspicion and/or probable cause that the Appellant and his vehicle had been involved in a criminal offense?
>
> II.   Whether there was sufficient evidence to convict the Appellant on the charge of delivery of a controlled substance as the Commonwealth failed to offer testimony from the

confidential informant that the Appellant had provided her cocaine while inside the Appellant's vehicle?

Appellant's brief at 4.

The first claim pertains to the denial of Appellant's motion to suppress. Our standard of review of the denial of a suppression motion is well-settled. We are limited to

> determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. [Since] the prosecution prevailed in the suppression court, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Postie*, 110 A.3d 1034, 1039 (Pa.Super. 2015) (citation omitted). When this Court evaluates the propriety of an officer detaining a citizen for investigative purposes, we apply the following principles:

> A police officer may detain an individual in order to conduct an investigation if that officer reasonably suspects that the individual is engaging in criminal conduct. This standard, less stringent than probable cause, is commonly known as reasonable suspicion. In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. In making this determination, we must give due weight to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience.

*Commonwealth v. Roberts*, 133 A.3d 759, 771 (Pa.Super. 2016) (citing *Commonwealth v. Ranson*, 103 A.3d 73, 77 (Pa.Super. 2014)). When a motion to suppress has been filed, the burden is on the Commonwealth to

establish by a preponderance of the evidence that the challenged evidence is admissible. ***Commonwealth v. Joseph***, 34 A.3d 855, 860 (Pa.Super. 2011).

Appellant asserts that the trial court should have suppressed the identification evidence[1] because the Commonwealth failed to call any witness who directly observed the controlled buy. According to Appellant, Trooper Martin's testimony was insufficient to satisfy the Commonwealth's burden to supply articulable facts justifying the seizure, and the Commonwealth was required to call one of the troopers who witnessed the actual drug sale. In urging affirmance of the trial court's order, the Commonwealth cites to the principle that officers may rely on information from their fellow officers in effectuating a seizure, and argues that Trooper Martin was permitted to seize the vehicle since Corporal Comerford clearly would have been able to do so.

It is well-settled that a police officer may validly rely on information related by a fellow officer in effectuating a seizure. The officer who actually makes the stop need not have personal knowledge of the facts justifying the

---

[1] Appellant does not clarify whether he means Trooper Martin should have been precluded from identifying Appellant at trial, or that the case should be entirely dismissed, as the police learned Appellant's name from that encounter. We need not resolve that question given our disposition of the claim.

seizure.   We summarized this concept in **Commonwealth v. Chernosky**, 874 A.2d 123 (Pa.Super. 2005) (*en banc*):

> It is entirely permissible for an officer to engage in the investigation of a suspect based on the observations of another officer even when the officer conducting the investigation has not been supplied with the specific facts needed to support the seizure; however, the officer who made the observations must have the necessary facts to support the ordered interdiction. **See United States v. Hensley**, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985) (police may conduct investigatory stop in reliance on another police department's wanted flyer as long as flyer was issued based on articulable facts supporting reasonable suspicion); **Commonwealth v. Kenney**, 449 Pa. 562, 297 A.2d 794 (1972) (officer making warrantless arrest pursuant to order from superior need not have probable cause for arrest provided superior had information necessary to support probable cause to order arrest). This precept flows from the realities of police investigation, which often relies upon the cooperation of many police officers.

**Id**. at 126.

We briefly examine **Hensley**.  Therein, an officer with the St. Bernard, Ohio police department received information on December 10, 1981 from an informant, who told the officer that Thomas Hensley had recently participated in an armed robbery of a tavern.  Based on this information, the officer distributed a "wanted flyer" to other police departments in the area. The flyer simply stated that Hensley was wanted for investigation of a robbery and gave a description.  **Id**. at 223.

The Covington Police Department, located approximately five miles from St. Bernard, received the flyer on December 10, 1981.  Several officers were acquainted with Hensley and began periodically checking areas he was

known to frequent. On December 16, 1981, several officers saw Hensley driving in the area, and stopped him. Firearms were recovered, leading to federal charges and a conviction.

The Court of Appeals for the Sixth Circuit reversed the conviction, finding that the flyer omitted a description of the specific and articulable facts which led the St. Bernard Police to suspect Hensley's involvement in a completed crime. The Supreme Court reversed, holding that "if a flyer or bulletin has been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense, then reliance on that flyer or bulletin justifies a stop to check identification." *Id*. at 232. Therefore, provided the St. Bernard authorities who issued the bulletin possessed reasonable suspicion, based on specific and articulable facts, the Covington authorities were permitted to briefly detain Hensley. *Id*. at 233-34.

Our Supreme Court discussed *Hensley* in *Commonwealth v. Queen*, 639 A.2d 443 (Pa. 1994), which Appellant relies upon. In *Queen*, Officer Bryant of the Philadelphia Police Department proceeded to a scene following a police radio request. When he arrived, three detectives were standing behind a vehicle occupied by Queen. One of these detectives, Mr. Mango, approached Officer Bryant and stated that Queen "resembled a male wanted for robbery." *Id*. at 444. Based on this information, Officer Bryant seized Queen, which ultimately led to the recovery of a firearm. *Id*. At the

suppression hearing, the Commonwealth called only Officer Bryant. The High Court concluded that the Commonwealth was required to call Detective Mango to sustain its burden, relying in part on *Hensley*:

> . . . *Hensley* clearly supports the proposition that a stop and frisk may be supported by a police radio bulletin *only* if evidence is offered at the suppression hearing establishing the articulable facts which support the reasonable suspicion. To hold otherwise would permit the government to bypass the protections of the Fourth Amendment and Article I, Section 8, of the Pennsylvania Constitution by always having a second police officer summoned for assistance for the purpose of making the inquiry of a suspect on the basis of an initial police officer's suspicion. At no time would the government have to establish any articulable facts, thus completely emasculating the protections against illegal searches and seizures.
>
> Applying the above principles to this record, it is clear that the suppression court erred in refusing to suppress Appellant's weapon. **The suppression court assumed that Detective Mango possessed the required facts to conduct an investigatory stop.**

*Id*. at 445-46 (emphasis added).

By relying on *Queen*, Appellant argues that the Commonwealth was required to call the witnesses who directly observed the conduct. We disagree. Neither *Hensley* nor *Queen* commands that the prosecution present the testimony of the officer who directly observed the conduct in question. *Queen's* holding that the Commonwealth was required to call Detective Mango to sustain its burden simply reflected the reality that **only** Detective Mango possessed the relevant information. The focus is not on the person who observed the conduct, but rather upon the requirement that

- 8 -

the "evidence . . . offered at the suppression hearing establish[es] the articulable facts." *Id*. at 445. Herein, the Commonwealth clearly satisfied that requirement by establishing that officers visually observed a CI purchasing drugs from Appellant, and stopped Appellant's vehicle shortly thereafter. Those facts simply came in through Trooper Martin.[2]

We note that Trooper Martin was directly involved in the investigation of the criminal conduct. He was part and parcel of the investigation, and was therefore permitted to rely upon, and testify to, his fellow officer's observations. *See United States v. Ventresca*, 380 U.S. 102, 111 (1965) ("Observations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number."); *Hensley*, *supra* at 231 ("[E]ffective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another and that officers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information.") (citation

---

[2] We are mindful that our scope of review limits our analysis to the evidence presented at the suppression hearing. *In re L.J.*, 79 A.3d 1073 (Pa. 2013). At the suppression hearing, Trooper Martin testified that Corporal Comerford told him of the pending controlled buy, and, following the sale, called Trooper Martin. The corporal described a 2001 Chrysler Sebring, bearing a particular license plate, told the trooper the driver had just sold drugs to a CI, and told him the direction it was traveling on a particular highway. N.T. 12/14/15, at 7.

omitted).[3]    Thus, the Commonwealth satisfied its burden and offered

articulable facts justifying the seizure.

Appellant's second claim pertains to the sufficiency of the evidence.

The standard we apply is well-settled.

> In reviewing the sufficiency of the evidence, we consider whether the evidence presented at trial, and all reasonable inferences drawn therefrom, viewed in a light most favorable to the Commonwealth as the verdict winner, support the jury's verdict beyond a reasonable doubt. The Commonwealth can meet its burden by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. As an appellate court, we must review the entire record and all evidence actually received. The trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or

---

[3]   We note that in ***Commonwealth v. Yong***, 120 A.3d 299 (Pa.Super. 2015), *appeal granted*, 137 A.3d 573 (Pa. 2016), we rejected an extension of the fellow-officer rule to the situation where knowledge of one officer is imputed to another.  Therein, Officer Gerald Gibson arrested Yong while executing a search warrant.  The Commonwealth presented Officer Joseph McCook, who had observed Yong participate in a controlled buy two days before the execution of the warrant.  The Commonwealth did not present any evidence that Officer McCook shared his knowledge with Officer Gibson or directed him to take any action, instead arguing that his knowledge could be imputed to Officer Gibson.

We reversed the trial court's denial of suppression, concluding that imputing knowledge under those facts stretched the fellow officer doctrine to its breaking point.  "At Yong's suppression hearing, it was the Commonwealth's burden to establish that Officer McCook directed Officer Gibson to arrest Yong."  Herein, the Commonwealth established that Corporal Comerford directed Trooper Martin to effectuate the stop, and that the two officers were in communication regarding a joint investigation.  Those actions comfortably fit within the fellow-officer rule.

none of the evidence. Because evidentiary sufficiency is a question of law, our standard of review is de novo and our scope of review is plenary.

***Commonwealth v. Dawson***, 132 A.3d 996, 1001-02 (Pa.Super. 2016) (citation omitted).

Instantly, Appellant's sole conviction was for delivery of a controlled substance, codified at 35 P.S. § 780–113(a)(30) of The Controlled Substance, Drug, Device and Cosmetic Act, which states in relevant part:

> (a)  The following acts and the causing thereof within the Commonwealth are hereby prohibited:
>
> . . . .
>
> > (30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780-113.  Delivery is defined as "the actual, constructive, or attempted transfer from one person to another of a controlled substance, other drug, device or cosmetic whether or not there is an agency relationship."  35 P.S. § 780-102.

Herein, the Commonwealth's theory of delivery derived from the CI's exchange of currency for the plastic bag that was turned over to the police. Since Appellant stipulated at trial that the substance in that bag was cocaine, the only element at issue was the delivery.  Appellant maintains

that the absence of the CI's testimony is fatal to the Commonwealth's ability to prove the charge beyond a reasonable doubt.

We disagree. The Commonwealth may secure a conviction through circumstantial evidence. Trooper Velez testified that, immediately prior to the controlled buy, he searched both the CI and her vehicle with negative results. She was wearing skintight clothing that, in the Trooper's estimation, could not possibly have concealed drugs on her person without his knowledge. N.T., 12/14/15, at 100. Moreover, Appellant left the Wal-Mart parking lot immediately after finishing the observed exchange and did not go into the Wal-Mart. The Trooper maintained constant visual contact throughout the entire encounter. While the Trooper admitted he could not see exactly what was exchanged in the vehicle, he saw something being passed between Appellant and the CI. The jury was permitted to infer that the object Appellant transferred to the CI was the cocaine that was turned over to Trooper Velez.

Appellant argued at trial and in this appeal that the authorities could have strip-searched the CI and failed to check for traps in her vehicle that may have contained drugs. Those asserted deficiencies clearly go to the weight of the evidence, not its sufficiency. Therefore, this evidence, deemed credible by the jury in its role as fact-finder and viewed in the light most favorable to the Commonwealth, was sufficient to sustain the conviction for delivery of a controlled substance.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/29/2016