J-S44026-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DEREK BULLINS | : | |
| | : | |
| Appellant | : | No. 3688 EDA 2016 |

Appeal from the Judgment of Sentence December 2, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0012171-2012

BEFORE:  LAZARUS, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MURRAY, J.:                **FILED AUGUST 17, 2018**

Derek Bullins (Appellant) appeals from the judgment of sentence imposed following his convictions of persons not to possess a firearm and firearms not to be carried without a license.[1]  We affirm.

In this appeal, Appellant challenges the trial court's denial of his suppression motion.  The trial court summarized the relevant facts and procedural history as follows:

> All facts are in connection with Appellant's motion to suppress hearing before the Honorable Judge Charles Cunningham on June 21, 2013.  Appellant moved to suppress all evidence [asserting that] police lacked the requisite reasonable suspicion or probable cause to stop him.  Specifically, Appellant seeks to suppress the police recovery of a firearm from his hoodie pocket.
>
> Officer John McCarron was the only individual to testify at the suppression hearing.  Officer McCarron has been a police officer for 18 years and specifically on the Narcotics Strike Force for 12½

---

[1]  18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1).

years. On September 25, 2012[,] at approximately 9:00 p.m., Officer McCarron was working in the area of 6500 Greenway Avenue on a narcotics stakeout. Officer McCarron had been involved in hundreds of arrests in that area. Officer McCarron stated that the area is infested with the sale and use of narcotics. At that time, Officer McCarron was in radio communication with Officers Miles and Long who were conducting a surveillance for narcotics in that area. Officer Miles worked with Officer McCarron in the Narcotics Strike Force since 2003. Officer McCarron received information from Officer Miles [regarding] a male [(Appellant)] sitting on a bike on the 6500 block of Greenway Avenue who was involved in several narcotics transactions.

When Officer McCarron arrived to the area, he observed Officer[s] Crawford and Rodriguez attempting to stop Appellant. When the officers removed Appellant from his bike, and as they put Appellant against [a] fence, he attempted to flee by running away. Officer McCarron then observed Appellant go to his waistband with his right hand. He believed that Appellant was attempting to get rid of something. Once Officer McCarron got to Appellant, he grabbed Appellant's waistband area and felt a gun in his hoodie pocket. Officer Crawford then recovered the firearm and placed Appellant under arrest.

Trial Court Opinion, 8/18/17, at 2-3.

On September 26, 2012, police arrested and charged Appellant [] with numerous offenses stemming from police recovery of [the] firearm. On June 21, 2016, the Honorable Charles J. Cunningham III denied Appellant's motion to suppress any and all evidence. On September 23, 2016, a jury found Appellant guilty of Possession of a Firearm Prohibited (F2) and Firearms Not to be Carried without a License (F3). On December 2, 2016, [the trial court] sentenced Appellant to an aggregated sentence of 6.5 to 17 years of incarceration.

Appellant filed a timely notice of appeal on December 4, 2016. On April 7, 2017, [the trial court] ordered Appellant pursuant to Pa.R.A.P. 1925(b) to file with the [c]ourt a Concise Statement of Matters Complained of on Appeal. On April 20, 2017, Appellant filed a Statement of Errors Complained of on Appeal.

*Id.* at 1-2.

On appeal, Appellant presents the following issue for review:

Did the suppression court err when it determined that the police had reasonable suspicion to stop [Appellant] and refused to suppress a firearm recovered from him, where 1) officer McCarron, who stopped [Appellant], but did not observe him involved in any alleged drug transactions, and stopped [Appellant] based only on information received from [O]fficer Miles, was the only officer to testify at the suppression hearing, and 2) Officer McCarron did not testify as to sufficient facts to establish reasonable suspicion to stop [Appellant], and he received all his information from Officer Miles, who did not testify at the motion to suppress hearing?

Appellant's Brief at 4.

Our standard of review is as follows:

[An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court] is bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [ ] plenary review.

***Commonwealth v. Mason***, 130 A.3d 148, 151–52 (Pa. Super. 2015) (quotations and citations omitted).

"The Fourth Amendment of the Federal Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from

unreasonable searches and seizures." ***Commonwealth v. Walls***, 53 A.3d 889, 892 (Pa. Super. 2012). "To secure the right of citizens to be free from such [unreasonable] intrusions, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive." ***Commonwealth v. Pratt***, 930 A.2d 561, 563 (Pa. Super. 2007). Courts in this Commonwealth have recognized three types of interactions between the police and a citizen: a mere encounter, an investigative detention, and a custodial detention.

> A mere encounter between police and a citizen need not be supported by any level of suspicion, and carr[ies] no official compulsion on the part of the citizen to stop or to respond. An investigatory stop, which subjects a suspect to a stop and a period of detention . . . requires a reasonable suspicion that criminal activity is afoot. A custodial search is an arrest and must be supported by probable cause.

***Commonwealth v. Newsome***, 170 A.3d 1151, 1154 (Pa. Super. 2017).

This Court has explained that when determining whether an interaction is a mere encounter versus an investigative detention,

> the focus of our inquiry is on whether a seizure of the person has occurred. Within this context, our courts employ the following objective standard to discern whether a person has been seized: [w]hether, under all the circumstances surrounding the incident at issue, a reasonable person would believe he was free to leave. Thus, a seizure does not occur simply because a police officer approaches an individual and asks a few questions.

***Commonwealth v. Cooper***, 994 A.2d 589, 592 (Pa. Super. 2010) (citations, quotation marks, and ellipses omitted). In contrast, "a custodial detention

occurs when the nature, duration and conditions of an investigative detention become so coercive as to be, practically speaking, the functional equivalent of an arrest." ***Commonwealth v. Mackey***, 177 A.3d 221, 227 (Pa. Super. 2017) (quotations and citations omitted).

Appellant challenges the trial court's conclusion that the police did not have reasonable suspicion to stop and detain him.[2] When evaluating the legality of investigative detentions, Pennsylvania has adopted the holding of ***Terry v. Ohio***, 392 U.S. 1 (1968), where the United States Supreme Court held that police may conduct an investigatory detention if they have reasonable suspicion that criminal activity is afoot. ***In re: D.M.***, 781 A.2d 1161, 1163 (Pa. 2001). These encounters with police are commonly known as ***Terry*** stops. In order to prove reasonable suspicion, "the police officer must be able to point to specific and articulable facts and reasonable inferences drawn from those facts in light of the officer's experience." ***Commonwealth v. Cook***, 735 A.2d 673, 677 (Pa. 1999). "The determination of whether an officer had reasonable suspicion that criminality was afoot so as to justify an investigatory detention is an objective one, which must be considered in light of the totality of the circumstances." ***Commonwealth v. Walls***, 53 A.3d 889, 893 (Pa. Super. 2012).

---

[2] We note that Appellant only challenges the police's initial attempt to stop and detain him. He does not challenge Officer McCarron's subsequent stop and protective search, during which Officer McCarron recovered a firearm, following Appellant's attempted flight.

- 5 -

Appellant argues that the trial court erred in denying his suppression motion because it did not have sufficient evidence to conclude that the police possessed the reasonable suspicion necessary to stop and detain him. Appellant asserts that a police radio bulletin can only support a stop and frisk if the Commonwealth presents evidence at the suppression hearing establishing articulable facts that support a finding of reasonable suspicion. Appellant contends that because Officer Miles did not testify, the Commonwealth did not introduce any articulable facts that established reasonable suspicion. Consequently, Appellant maintains, the trial court was left to speculate as to whether Officer McCarron and the other officers actually possessed reasonable suspicion to initially stop him.

In support of his claim, Appellant relies on our Supreme Court's decision in **Commonwealth v. Yong**, 177 A.3d 876 (Pa. 2018). In **Yong**, the Supreme Court addressed the issue of whether an "investigating officer's knowledge of facts sufficient to create probable cause to arrest may be imputed to a second officer, who arrests the suspect, when the two officers are working as a team, but there is no evidence the investigating officer with probable cause directed the arresting officer to act." **Id.** at 877. The Court held that

> where . . . the arresting officer does not have the requisite knowledge and was not directed to so act, . . . the seizure is still constitutional where the investigating officer with probable cause or reasonable suspicion was working with the officer and would have inevitably and imminently ordered that the seizure be effectuated.

*Commonwealth v. Yong*, 177 A.3d at 890.

Contrary to his arguments, *Yong* actually supports the constitutionality of the police's initial attempt to stop and detain Appellant. The record reflects that on the night in question, Officer McCarron, a veteran police officer who had spent 12½ years on the Narcotic Strike Force, was assisting in the surveillance of an area "infested with narcotics" along with Officer Miles and several other officers. N.T., 6/21/13, at 7-8. Officer McCarron stated that he had worked with Officer Miles on the Narcotic Strike Force for approximately nine years. *Id.* at 9-11. Officer McCarron testified that while conducting their surveillance, Officer Miles informed him that he observed Appellant, who was sitting on a bicycle, engage in several narcotics transactions. *Id.* at 9. At this time, Officer McCarron and two other police officers arrived at Appellant's location, and attempted to detain him. *Id.* at 11.

Officer McCarron and the other officers did not initially possess the requisite knowledge to conduct an investigatory detention of Appellant, as Officer Miles was the officer who was conducting direct surveillance of Appellant. *Id.* at 18. Upon observing Appellant engage in several drug transactions, Officer Miles possessed reasonable suspicion to stop and detain him. Officer Miles put out a radio call to Officer McCarron and the other officers on the Narcotics Strike Force regarding Appellant's drug-related activities. *Id.* at 17. We can infer from this radio call, given that all of the officers involved were working as a team while surveilling the area and that three of them

immediately moved to stop and detain Appellant, that Officer Miles had either instructed the officers to apprehend Appellant or would have inevitably and imminently asked them to do so.

Accordingly, we conclude, based on the totality of the circumstances, that the record supports the trial court's determination that the police officers who attempted to stop and detain Appellant had reason to believe he was engaged in criminal activity. Under *Yong*, the police's initial attempt to stop and detain Appellant did not violate his constitutional rights.

Appellant also relies on our Supreme Court's decision in *Commonwealth v. Queen*, 639 A.2d 443 (Pa. 1994). In *Queen*, Officer Bryant responded to a call for backup for a vehicle stop. Upon arriving at the scene Officer Bryant frisked the defendant after Detective Mango, who had arrived before Officer Bryant, told the officer that the defendant resembled a male wanted for robbery. *Id.* at 444. Officer Bryant arrested the defendant after he discovered the defendant was carrying a firearm without a license. *Id.* The defendant filed a suppression motion in which he argued that the frisk violated his constitutional rights. *Id.* Detective Mango, however, was unable to testify at the suppression hearing. *Id.* at 445.

On appeal, our Supreme Court concluded that the stop and frisk violated the Fourth Amendment, as Detective Mango's testimony was "essential" to "support the search of [the defendant]." *Id.* The Supreme Court held that "a stop and frisk may be supported by a police radio bulletin only if evidence is

- 8 -

offered at the suppression hearing establishing the articulable facts which support the reasonable suspicion." *Id.* The Court explained:

> Applying the above principles to this record, it is clear that the suppression court erred in refusing to suppress [the defendant]'s weapon. The suppression court assumed that Detective Mango possessed the required facts to conduct an investigatory stop. At the suppression hearing, Officer Bryant testified that Detective Mango did not tell him any of the pertinent facts from which Detective Mango concluded that [the defendant] was a suspected robber, only that Detective Mango believed he was. Therefore, the suppression court did not have a description of the robbery suspect or the circumstances surrounding the robbery. Without any such information, the suppression court was required to speculate as to whether Officer Bryant had sufficient facts to establish a reasonable suspicion. Such action clearly violates both the Fourth Amendment of the United States Constitution and Article I, Section 8, of the Pennsylvania Constitution.

*Id.* at 445-46.

This case is readily distinguishable from **Queen**. In **Queen**, Officer Bryant conducted an investigatory detention of the defendant after Detective Mango told him he **believed** the defendant resembled a male wanted for robbery. *Id.* at 444. Here, however, Officer McCarron received information directly from Officer Miles indicating that Officer Miles had just observed Appellant engage in several narcotics transactions. N.T., 6/21/13, at 9. Thus, this case is not like **Queen** where Detective Mango at best informed Officer Bryant of his speculation that the defendant resembled a male wanted for robbery. To the contrary, here, Officer Miles told Officer McCarron that he specifically observed Appellant in the recent sale and delivery of narcotics. Therefore, **Queen** is not applicable to this case.

Accordingly, as the record supports the trial court's conclusion that, based on the totality of the circumstances, the police had reasonable suspicion to stop and detain Appellant, the trial court did not err in denying Appellant's suppression motion.

Judgment of sentence affirmed.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
Prothonotary

Date: *8/17/2018*