J-S30006-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| RAHEEM HUTCHINSON | : | |
| Appellant | : | No. 1391 EDA 2022 |

Appeal from the Judgment of Sentence Entered May 4, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0003617-2021

BEFORE:  BENDER, P.J.E., LAZARUS, J., and SULLIVAN, J.

MEMORANDUM BY BENDER, P.J.E.:                   **FILED DECEMBER 6, 2023**

Appellant, Raheem Hutchinson, appeals from the aggregate judgment of sentence of six to fifteen years' incarceration, imposed after he was convicted of possession with intent to deliver (PWID), 35 P.S. § 780-113(a)(30), possession of a controlled substance, 35 P.S. § 780-113(a)(16), possession of a firearm, 18 Pa.C.S. § 6106, possession of a firearm by a person prohibited, 18 Pa.C.S. § 6105, carrying a firearm on a public street in Philadelphia, 18 Pa.C.S. § 6108, carrying a loaded weapon, 18 Pa.C.S. § 6106.1, and possessing an instrument of crime (PIC), 18 Pa.C.S. § 907.  On appeal, Appellant challenges the court's denial of his pretrial motion to suppress, as well as the sufficiency of the evidence to sustain several of his convictions.  After careful review, we affirm.

We detail the facts underlying Appellant's convictions in detail, *infra*. At this point, we need only note that Appellant was convicted of the above-stated offenses on February 17, 2022. Just prior to his trial, the court heard evidence on Appellant's pretrial motion to suppress and denied the same. On May 4, 2022, the court sentenced Appellant to the aggregate term set forth *supra*. He filed a timely notice of appeal, and complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The trial court filed its Rule 1925(a) opinion on November 1, 2022. Herein, Appellant states three issues for our review:

> 1. Whether police had reasonable suspicion to conduct a ***Terry***[1] stop of Appellant, who was never seen driving the car in question but had it registered in his name, because that car had driven by a police patrol car at a high rate of speed and with tinted windows about half an hour before the police tried to stop Appellant?
>
> 2. Whether the search warrant contained probable cause to search the car, which was registered to Appellant, where the only allegations were that the car drove by police at a high rate of speed and with tinted windows half an hour before police tried to stop Appellant, police did not try to stop the car at that time, and when police tried to stop Appellant, he ran and dropped a firearm?
>
> 3. Whether the Commonwealth introduced sufficient evidence to prove that Appellant committed the offenses of possession with the intent to deliver, possession of a controlled substance, possessing an instrument of crime, and carrying loaded weapons where the evidence showed only that he owned the car in question but not that he was ever in it and that the gun was not a long gun as required for the carrying loaded weapons statute?

Appellant's Brief at 7.

---

[1] ***Terry v. Ohio***, 392 U.S. 1 (1968).

Appellant's first two issues challenge the trial court's denial of his motion to suppress evidence on the grounds that the police lacked reasonable suspicion or probable cause to stop and detain him, and that a search warrant issued for his vehicle was unsupported by probable cause. We begin by setting forth the findings of fact and conclusions of law issued by the trial court at the close of the suppression hearing:

> The defense brought a motion to suppress, in other words, to suppress all physical evidence, asserting the lack of probable cause for [Appellant's] arrest and seizure and lack of reasonable suspicion for the same.
>
> [Appellant] also brings, among others, a four corners motion challenging the veracity of the contents of the affidavit of probable cause supporting a warrant that was later used to search the vehicle that he was allegedly driving.
>
> Pursuant to which the Commonwealth called Police Officer Brian Smith, … who testified that on 4/5/2021 at approximately seven p.m., he was on routine patrol in uniform and in a marked vehicle with his partner, Officer [William] Kolb, in the area of 57th and Locust Street wearing body cams.
>
> He testified that he had patrolled that area more than 70 percent of his time during his six years as a police officer at the time. He testified that[,] in the immediate area, he participated in five to ten arrests for guns, [and] responded to over 12 shootings in the three to four-block area.
>
> He indicated that he was in a patrol car, stationary, facing northbound on 57th Street[,] when he saw a vehicle drive past them with heavy tint. It was a blue Honda Accord.
>
> The officers then indicated that the patrol vehicle then made a[] U-turn to pursue that car. [Officer Smith d]id not recall if the lights and sirens were activated. His partner was driving. [He i]ndicated that the vehicle … fled at a high rate of speed. He did not pursue the vehicle, but did call in the tag number to other officers. [Officer Smith d]id not recall if lights and sirens were activated at any point.

About a half an hour later[,] on the north corner of 58th and Spruce, they laid eyes on the same blue Honda Accord, stationary, parked at the corner. They testified that at that particular point, he didn't see anyone in or near the vehicle.

He did hear [that other] officers were engaged in foot pursuit of the person later identified as [Appellant,] and he joined the foot pursuit. He also assisted in the apprehension of [Appellant].

During this apprehension[,] or somewhere during the pursuit and/or apprehension, a gun was recovered. Police Officer … Kolb testified that on 4/5/21 at approximately seven p.m.[,] he was working on routine patrol with Officer Smith in the 18th District and in the area of 57th and Locust.

He indicated that he was the driver, that he had been assigned almost seven years as a patrol officer[,] and therefore he patrolled that area daily. He described that four-block radius as a place where he conducted approximately 12 arrests for firearms, approximately 12 arrests for narcotics[,] and had responded to approximately 20 shootings. He testified that he saw the [same] blue Honda travel westbound … while they were parked. He indicated that [as] the vehicle turned southbound on 52nd Street, [the officer] made a U-turn behind the vehicle.

In flight from the officers, the vehicle went around several cars that were stationary waiting for the light to change and went through the red light. He indicated that at no time did he activate lights and sirens[,] and that he did not pursue the blue Honda but called in over radio to other officers.

When he called in the plate, he also indicated that the vehicle came back as registered to [Appellant]. Police Officer Kolb testified that half an hour later, he saw the vehicle again at 5800 Spruce Street where it was parked at the corner[,] and he saw [Appellant] running with plainclothes officers in hot foot pursuit.

He further testified that his partner, Officer Smith, joined the pursuit while he, himself, Officer Kolb, stayed with the vehicle. He was there for approximately 20 to 30 minutes. After [Appellant] was apprehended, he transported the vehicle to the 18th District.

He had been holding the vehicle, but he testified that the vehicle was moved for concerns of police officer safety because it was what he described as a gang area and at least one person asked about the vehicle or asked to enter the vehicle and he was

concerned that while pulling[2] the vehicle there might be an incident.

He further testified that he drove the car to the 18th District wearing the body cam and that he was not present [during,] nor did he participate in[,] any search of the car.

Police Officer Eric Leary testified that on 4/5/2021 at approximately seven p.m., he was serving Criminal Intelligence Unit for the Southwest Detectives Division in plainclothes, that he was in the area of 58th and Spruce within the 18th District, that he had … [made,] within the 18th District[,] arrests for firearms, [and] more than ten arrests for drugs, and had responded to more than ten shootings. He testified that he first saw [Appellant] at 60th and Pine walking westbound.

He had been alerted that [Appellant] was there by a brother officer who saw him on camera footage. He testified that he saw the vehicle he had been alerted about, that the video showed [Appellant] on the sidewalk[, but his view was] blocked by a truck from showing [Appellant] enter the vehicle.

He had followed the vehicle eastbound and confirmed from the tag while he was in the unmarked vehicle that this was the vehicle that he had been alerted about. He testified that moments later when he saw the vehicle on the 5800 block of Spruce Street, he saw [Appellant] running while holding his front waistband. When they [had] seen [Appellant] previously, he was walking, but at this point, he saw [Appellant] running while holding his front waistband[. Appellant] ran through the rec center[,] and he ran to cut [Appellant] off.

He also testified that he received training in firearms recovery since 2012 and pursuant to his training and experience, people carry guns in their waistband. He testified that he yelled "police" to [Appellant], who continued to flee.

He did not apprehend [Appellant,] nor did he make any recoveries. He indicated that during the chase, at some point[, Appellant] had run towards him because of the path of flight. He also testified that he didn't know if any of the other officers had his gun out and that he himself did not at that point.

_____

[2] We assume by "pulling" the court meant towing the vehicle.

Police Officer Vincent Ficchi testified … that[, as] part of the FBI Task Force[,] … on 4/5/21[,] he was assigned to the Southwest Task Force and was then in plainclothes in an unmarked vehicle, along with Police Officers Leary, Allen[,] and Devine.

He indicated that when he was in the area of 58th and Spruce Street that day around seven p.m., he had already received a radio call about a vehicle that had fled from police within the 18th District and the direction and the description of the vehicle.

He saw that vehicle on the 5800 block of Spruce Street[,] and he saw [Appellant] walking away from that vehicle at a fast pace when he first saw him.  He also observed a marked police vehicle parked in the same corner.  He exited the car.  Even though he was out of uniform, he was wearing the badge.

He announced himself by saying[, "]police, stop, come here,["] to which [Appellant] grab[bed] his waistband and [ran].   He engage[d] in pursuing [Appellant], who climbed over a fence.

While he was climbing over the fence, he observed a gun fall from [Appellant's] body and [Appellant got] over the fence and [ran] toward uniformed police that were coming from the other side of the field, at which point [Appellant] turned around, ran back towards Police Officer Ficchi, but before reaching him, then made a left….

In any event, it's a perpendicular turn away from Officer Ficchi, which took him to a parking lot which is where [Appellant was] eventually apprehended by multiple officers.  He [testified] that he did not recall whether or not he pulled the firearm while he was chasing [Appellant,] and that he chased [Appellant] about 30 or 40 feet before he got to the fence.

There was a stipulation that a search and seizure warrant was prepared and executed … for the vehicle that was removed from 5800 Spruce Street [at] three a.m., on 4/6/21, which was approximately eight hours after the initial sighting of [Appellant].

The Commonwealth bears a burden to prove by a preponderance of the evidence that all police activity was lawful.  This [c]ourt finds that the initial sighting of [Appellant's] car, in this case, the blue Honda Accord, there was reasonable suspicion [to stop the car]: First, by the tint of the car; and, second, by the car's flight from the marked vehicle.

This [c]ourt also finds that the flight was unprovoked and in a high[]crime area. Therefore, at that initial point[,] there was probable cause to stop the vehicle, if not more, given the flight.

This [c]ourt finds that approximately half an hour later when [Officer Smith] saw the vehicle again and [Appellant] took flight on foot, again, in the same immediate area, there was, at the very least, reasonable suspicion, very likely probable cause for his seizure.

During this event is when [Appellant's] firearm dropped[,] and by then there is undoubtedly probable cause justifying his seizure. This [c]ourt finds that the circumstantial and direct evidence combined establish that [Appellant] was either the driver of the vehicle or associated with the vehicle, justifying this stop.

This [c]ourt finds that the removal of the car from the scene was justified by safety concerns as they were holding the vehicle. It follows that probable cause existed to search the vehicle from all of the events that transpired and provided ample support for the search and seizure warrant that was prepared for the search.

Therefore, the car was legally seized and searched and the seizure of anything in the vehicle, which I don't know what it is, those items are not to be excluded because they were legally obtained.

Therefore, the motion to suppress physical evidence is denied and the four corners motion is also denied.

Trial Court Opinion (TCO), 11/1/22, at 2-5 (quoting N.T., 2/17/22, at 128-38).

In Appellant's first issue, he contends that the police lacked reasonable suspicion to conduct an investigatory detention. We begin by recognizing that,

[t]he Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution guarantee the right of the people to be secure in their persons, houses, papers, and possessions from unreasonable searches and seizures. To secure the right of citizens to be free from unreasonable search and seizure, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens to the extent those interactions compromise individual liberty. Because interactions between law

enforcement and the general citizenry are widely varied, search and seizure law looks at how the interaction is classified and if a detention has occurred.

The law recognizes three distinct levels of interaction between police officers and citizens: (1) a mere encounter; (2) an investigative detention, often described as a *Terry* stop…; and (3) a custodial detention.

A mere encounter can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen. The hallmark of this interaction is that it carries no official compulsion to stop or respond and therefore need not be justified by any level of police suspicion.

In contrast, an investigative detention carries an official compulsion to stop and respond. Since this interaction has elements of official compulsion[,] it requires reasonable suspicion of unlawful activity.

Finally, a custodial detention occurs when the nature, duration and conditions of an investigative detention become so coercive as to be, practically speaking, the functional equivalent of an arrest. This level of interaction requires that the police have probable cause to believe that the person so detained has committed or is committing a crime.

*Commonwealth v. Muhammad*, 289 A.3d 1078, 1086–87 (Pa. Super. 2023) (internal citations omitted).

In this case, Appellant claims that he was seized at the moment Officer Ficchi got out of his police car, identified himself as a police officer, and said to Appellant, "'police, don't move, come here' in a loud voice." Appellant's Brief at 20 (quoting N.T. at 81 (Officer Ficchi's testifying about his initial interaction with Appellant)). Appellant insists that any "reasonable person would not have felt free to leave" at this moment and, thus, "this was a stop." *Id.* at 20-21. We agree.

In next determining whether Officer Ficchi had reasonable suspicion to initiate Appellant's investigative detention,

> the fundamental inquiry is an objective one, namely, whether the facts available to police at the moment of the intrusion warrant a man of reasonable caution in the belief that the action taken was appropriate. Reasonable suspicion is dependent on both the quantity and quality of the information police possess prior to detaining an individual. In order to assess the facts available to police, we must consider the totality of the circumstances. While reasonable suspicion is a less stringent standard than probable cause, the detaining officer must be able to articulate something more than an inchoate and unparticularized suspicion or hunch.
>
> A consideration [of] the totality of the circumstances includes such factors as tips, the reliability of any tips, location and suspicious activity.

**Muhammad**, 289 A.3d at 1087 (internal citations omitted).

Instantly, according to the trial court's findings of fact, the circumstances known to Officer Ficchi at the moment he stopped Appellant were the following: he received a radio call that a vehicle had fled from police; the location was a high crime area where his fellow officers had made arrests for drugs, guns, and shootings;[3] he had a description of that vehicle; he saw

---

[3] We recognize that Officer Ficchi did not testify to his knowledge of the area as being high crime. However, our Supreme Court "recognized in **Commonwealth v. Queen**, 639 A.2d 443, 445–46 and n. 4 (Pa. 1994), [that] an officer responding to a police radio bulletin is justified in conducting a **Terry** stop, even if that officer is not in possession of enough facts to meet the reasonable suspicion requirement, provided the officer who requests the first officer to make the stop has the requisite facts at his or her disposal." **Commonwealth v. Jackson**, 698 A.2d 571, 574 (Pa. 1997). Officers Smith and Kolb both testified that, in their experience, the area in which they first encountered Appellant and from which he fled was a high crime area. They then called in the description of Appellant's vehicle and reported that he had fled from them over the police radio. **See** TCO at 3.

a parked vehicle matching that description; he observed Appellant "walking away from that vehicle at a fast pace[;]" and a "marked police vehicle parked [at] the same corner." TCO at 4.

Our Supreme Court has stated that, "it is evident that unprovoked flight in a high crime area is sufficient to create a reasonable suspicion to justify a *Terry* stop under the Fourth Amendment." *In re D.M.*, 781 A.2d 1161, 1164 (Pa. 2001). Appellant, however, claims that the record does not support the court's conclusion that he fled from Officers Smith and Kolb "because the officers testified repeatedly that they did not pursue the car or attempt to stop it." Appellant's Brief at 24. Appellant also stresses that no officer testified to seeing him actually driving that vehicle at any point and, therefore, reasonable suspicion to stop him was lacking.

We disagree. First, regarding the court's conclusion that Appellant fled from Officers Smith and Kolb, Officer Smith testified as follows:

> [Officer Smith:] We first saw the vehicle at 57[th] and Locust. We were facing north on 57th Street. The vehicle was passing us, headed west on Locust and then making a left-hand turn southbound on 57th Street.
>
> [The Commonwealth:] And at this time, was your vehicle traveling, or were you stationary?
>
> [Officer Smith:] We were stationary as it was passing us.
>
> [The Commonwealth:] What, if anything, did you do in response to seeing this vehicle?
>
> [Officer Smith:] Initially, we saw the vehicle had tint. We made a U-turn to further investigate ***and the vehicle fled at a high rate of speed*** further south on 57th, [and] made a right-hand turn onto Spruce, and we did not pursue it.

- 10 -

N.T. at 14-15 (emphasis added).

Additionally, Officer Kolb testified that he and Officer Smith were parked in a marked patrol car at the intersection of 57th and Locust Streets when he first observed Appellant's vehicle traveling "westbound on 5600 Locust" with windows and a "front windshield" that were "heavily tinted." **Id.** at 27, 30. As the officer pulled out and made a U-turn to follow the car, he saw the vehicle "traveling at a high rate of speed at this point…." **Id.** at 31. The car went around three vehicles stopped at a traffic light and "went through a red light…." **Id.** Although both officers testified that they did not **continue to** pursue Appellant's vehicle, it is clear that Appellant **initially** fled from them after they made a U-turn in their marked police vehicle to follow him. Thus, the record supports the trial court's finding that Appellant fled from police.

Moreover, we conclude that there was sufficient circumstantial evidence that Appellant was driving the car both when it fled from Officers Smith and Kolb, and just before Officer Ficchi stopped him, to establish that Officer Ficchi had reasonable suspicion to do so. Officer Smith called in the license plate of the blue Honda Accord and discovered that it was registered to Appellant. The United States Supreme Court has held that it is reasonable to assume that the registered owner of a vehicle is the person driving it, absent any information negating that inference. **See Kansas v. Glover**, 140 S.Ct. 1183, 1186 (2020) (holding that "when the officer lacks information negating an inference that the owner is the driver of the vehicle, the stop is reasonable"); **Commonwealth v. Jefferson**, 256 A.3d 1242, 1249 (Pa. Super. 2021) (*en*

*banc*), *appeal denied*, 268 A.3d 1071 (Pa. 2021) (holding that, under **Glover**, police had reasonable suspicion to stop Jefferson's vehicle based solely on the inference that Jefferson, who had an outstanding warrant for his arrest and was the registered owner of the vehicle, would be found in the vehicle). Moreover, when Officer Ficchi observed Appellant, he was close to his parked vehicle and was walking quickly away from it, while a marked police cruiser was parked nearby. It was reasonable for Officer Ficchi to suspect that Appellant had alighted from the vehicle and was attempting to distance himself therefrom, as that same vehicle had fled from other officers not long before. Accordingly, Officer Ficchi had reasonable suspicion to order Appellant to stop so the officer could further investigate.[4]

In Appellant's second issue, he argues that the search warrant issued for his vehicle was not supported by probable cause.

> When reviewing a magistrate's decision to issue a search warrant based upon an affidavit of probable cause, our scope of review is narrow, and our standard of review is restrained. We review only "the information within the four corners of the affidavit submitted in support of probable cause…." **Commonwealth v. Rogers**, … 615 A.2d 55, 62 ([Pa. Super.] 1992); **see also** Pennsylvania Rule of Criminal Procedure 203(D). The "duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." **Illinois v. Gates**, 462 U.S. 213, 238–39 … (1983) (some punctuation omitted). Thus, we "may **not** conduct a *de novo* review of the issuing authority's probable cause determination." **Commonwealth v.**

---

[4] The Commonwealth also contends that there was probable cause to stop Appellant based on the window tint vehicle violation observed by Officers Smith and Kolb. We need not address this argument, as Officer Ficchi had reasonable suspicion to detain Appellant for the reasons stated *supra*.

> ***Huntington***, 924 A.2d 1252, 1259 (Pa. Super. 2007) (emphasis added).

***Commonwealth v. Batista***, 219 A.3d 1199, 1202 (Pa. Super. 2019).

Here, Appellant sets forth the information contained in the affidavit of probable cause, which we reproduce *verbatim*:

> On 4/5/21 approximately 6:55 pm, 18th District Officers Smith#2457 and Kolb# 9807, were working parked at the Southeast corner of 57th & Locust Street doing paperwork when they observed a blue Honda Accord, PA tag# LKV1056, traveling Westbound on Locust Street then turn Southbound on 57th Street. The vehicle was being operated with dark heavy tint on the windows in violation of PA MVC 4524-E (sunscreen prohibited). The officers know, Raheem Hutchinson, 21/B/M, to operate the vehicle. Hutchinson is a known member of the 'Sitzzy/Southside gang' which operates from 62nd Street to 57th Street. Locust St. to Osage Avenue. The officers performed a Uturn and got behind the vehicle. When they got behind the vehicle, it accelerated at a high rate of speed traveling Southbound on 57th Street. It went around three parked cars and disregarded a steady red signal at 57th & Spruce Street. The vehicle continued at a high rate of speed Northbound on 58th Street, then Westbound on Walnut Street. The officers lost sight of the vehicle as it was going Westbound on Walnut Street from 59th Street. The officers notified police radio that the vehicle took off from them and they provided the description and tag number of the vehicle and the direction it was last seen traveling. They also advised police radio that the car was registered to Raheem Hutchinson. PA BMV records show that the vehicle is registered to Hutchinson at 245 S Cecil Street, Phila., PA 19139.

> Approximately thirty minutes later, Officers Leary# 6804, Ficchi# 5296, Allen# 1384 and Devine# 1700, detailed to the Criminal Intelligence Unit, were working in a plainclothes capacity and operating a marked vehicle in the area of 245 S. Cecil Street. While surveying the area, they observed Raheem Hutchinson on foot at 60th & Pine Street. The officers parked their vehicle nearby in a strategic location and P/O Leary pulled up the live video feed from the PPD RTCC pole camera at 60th & Pine Street. Approximately 7:23 pm, P/O Leary observed Hutchinson get into a dark colored Honda Sedan on the 6000th block of Pine Street. The vehicle then pulls out of a parking spot and makes a U-Turn

to head East on Pine Street and then turns North onto 58 th Street. The officers get behind the vehicle on 58th Street and P/O Leary confirmed the tag number over police radio. P/O Leary then requested to have a marked police unit stop the vehicle and provide back up. As the officers were waiting for a marked unit to arrive, the vehicle pulled over into a parking spot on the North side of Spruce Street. Marked units started to pull up to the location. The plainclothes officers proceeded to go Westbound on Spruce Street to preserve the integrity of the investigation. As they got a half a block away, they observed Raheem running Westbound on Spruce Street. As he was running, he was holding the front of his waistband. P/O Ficchi exited the unmarked police vehicle and identified himself as a police officer. He ordered Hutchinson to stop, but he continued to run. P/O Ficchi pursued him on foot. Hutchinson ran to the corner of the playground and as he hopped over a fence he discarded a firearm. Hutchinson continued to run but was cut off by additional units. Hutchinson then fled across the football field and into a parking lot where he was taken into custody by P/O Ficchi# 5296 and P/O Smith# 2457. P/O Ficchi returned to the area where he observed Hutchinson discard the firearm and recovered a black and tan, 9mm, Glock 43x, semi-automatic handgun. The firearm has a serial number on the lower receiver which is BMDK701. The serial number on the slide is BPLN700. It was loaded with an extended magazine that contained sixteen live rounds. There was one live round loaded in the chamber. P/O Devine recovered keys belonging to the Honda Accord approximately five to ten feet from where the gun was recovered.

Raheem Hutchinson does not have a permit to carry and is prohibited from possessing firearms. He was arrested and transported to Southwest Division Booking Center for processing. The Honda Accord belonging to Raheem Hutchinson was driven to the 18th District Headquarters and secured. The firearm was swabbed for potential DNA evidence.

Based on the above facts and circumstances, your affiant is requesting that a search warrant be issued in order to conduct a search of the blue 2006 Honda Accord, PA tag# LKV-1056 (VIN# 1HGCM56356A108764) belonging to Raheem Hutchinson, for any firearms, ammunition, ballistic evidence, holsters, gun boxes, photographs and any other items of evidentiary value.

Appellant's Brief at 25-27 (citing Commonwealth's Suppression Exhibit 4).

Initially, Appellant notes that "the events described in the warrant are wildly different from the events described by the officers at the motion to suppress…." *Id.* at 27. However, he acknowledges that his trial counsel did not challenge the warrant on this basis and, therefore, he did not preserve this issue for appeal. *Id.* at 27 n.3. We agree. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Therefore, we do not address the differences between the affidavit of probable cause and the officers' testimony but, instead, focus solely on whether the information contained in the affidavit was sufficient for the issuing authority to determine that probable cause existed to support a search warrant.

Appellant challenges the validity of the warrant on the basis that "the affidavit of probable cause for the search warrant contains no information whatsoever as to why police wanted to search the car, what they expected to find, or why they expected to find additional evidence." Appellant's Brief at 27 (footnote omitted). Appellant claims that "[t]he warrant suggests only that [he] was in the car at one point, parked and exited on his own prior to being stopped, and then ran and discarded a gun when the police tried to stop him." *Id.* at 30. He argues that there had to be "some nexus" between his "possession of a firearm outside of the car" and the vehicle itself to demonstrate that there was likely contraband therein. *Id.* Finally, Appellant maintains that because "the warrant contained information regarding the

recovery of the firearm, the search of the car was also based on the fruit of the poisonous tree[,]" as he contends that his stop, which led to the recovery of that firearm, was illegal. *Id.* at 31.

Appellant's arguments are meritless. We have concluded that his stop was lawful and, therefore, the inclusion of information regarding the firearm in the warrant application was not error. Moreover, the circumstantial evidence made it reasonable to assume that Appellant was driving the vehicle when he fled from Officers Smith and Kolb in a high crime area known for drugs and guns. Additionally, it was reasonable to suspect that Appellant had just exited his parked vehicle when Officer Ficchi later saw Appellant in close proximity to the vehicle and quickly walking away from it. Appellant then fled from Officer Ficchi when he attempted to stop him, and he dropped the firearm during that flight.

We agree with the Commonwealth that that these facts make "this case … analogous to **Commonwealth v. Bartee**, 868 A.2d 1218 (Pa. Super. 2005)," where "the affidavit of probable cause asserted that the appellant [had] recently driven a specific vehicle and possessed a firearm." Commonwealth's Brief at 14; **see also Bartee**, 868 A.2d at 1221. "Based on those facts, this Court found probable cause was established to issue a warrant to search the vehicle for ammunition, magazines, and evidence related to the appellant's unlawful firearm possession." *Id.* Similarly, here, "the warrant was based on … probable cause to believe there would be firearms-related evidence in the vehicle [Appellant] had just been driving." *Id.* Therefore, the

- 16 -

trial court did not err in concluding that probable cause existed to support the issuance of the search warrant for Appellant's vehicle based on the totality of these circumstances.

In Appellant's third and final issue, he contends that the evidence was insufficient to sustain his convictions. First, he challenges his convictions of PWID and possession of a controlled substance, arguing that the Commonwealth failed to prove that he constructively possessed the narcotics that were found in the vehicle. Appellant further contends that, "without evidence that [he] possessed the drugs in the car, there is no evidence in the record of the *mens rea* necessary to uphold a conviction of [PIC]." Appellant's Brief at 35. Last, Appellant maintains that the evidence was insufficient to support his conviction under section 6106.1, as that statute "applies to long guns like rifles that are longer than those described in [section] 6102" and, here, the firearm "was clearly a handgun of normal length…." **Id.** at 36.

Initially, we are compelled to conclude that Appellant waived his challenges to the sufficiency of the evidence to sustain his convictions for possession of a controlled substance and carrying a loaded weapon under section 6106.1. Appellant did not mention either of these convictions in his Rule 1925(b) statement. **See** Pa.R.A.P. 1925(b), 8/12/22, at 1-3 (unnumbered); **see also** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."); Pa.R.A.P 1925(b) Order, 6/6/22, at 1 (warning that "[a]ny issue not properly included in the statement timely filed

and served[]shall be deemed waived") (unnumbered); ***see also Greater Erie Indus. Dev. Corp. v. Presque Isle Downs, Inc.***, 88 A.3d 222, 225 (Pa. Super. 2014) (*en banc*) ("[I]n determining whether an appellant has waived his issues on appeal based on non-compliance with [Rule] 1925, it is the trial court's order that triggers an appellant's obligation[. T]herefore, we look first to the language of that order.") (citations omitted; some brackets added).[5]

In regard to Appellant's challenges to the sufficiency of the evidence to sustain his PWID and PIC convictions, which he raised in his Rule 1925(b) statement, we conclude that his arguments are meritless. Initially, we observe that,

_____

[5] We observe that, although the Commonwealth notes Appellant failed to raise his challenge to his section 6106.1 conviction in his concise statement, it concedes that his conviction for that offense "was returned in error." Commonwealth's Brief at 16. The Commonwealth explains that "[t]he trial court mischaracterized the statute as prohibiting the carrying of a loaded firearm, but [section] 6106.1 criminalizes the possession of a loaded weapon 'other than a firearm.'" ***Id.*** **See also** 18 Pa.C.S. § 6106.1 ("Except as provided in Title 34 (relating to game), no person shall carry a loaded pistol, revolver, shotgun or rifle, ***other than a firearm as defined in section 6102*** (relating to definitions), in any vehicle.") (emphasis added); 18 Pa.C.S. § 6102 ("Any pistol or revolver with a barrel length less than 15 inches, any shotgun with a barrel length less than 18 inches or any rifle with a barrel length less than 16 inches, or any pistol, revolver, rifle or shotgun with an overall length of less than 26 inches. The barrel length of a firearm shall be determined by measuring from the muzzle of the barrel to the face of the closed action, bolt or cylinder, whichever is applicable."). Instantly, the parties do not dispute that the gun Appellant possessed met the definition of "firearm" set forth in section 6102. Thus, it would appear that the Commonwealth is correct that Appellant should not have been convicted of an offense under section 6106.1, even though the court imposed no further penalty for that conviction. However, as Appellant has waived this claim for our review, we are unable to afford him relief.

"[w]hether the evidence was sufficient to sustain the charge presents a question of law." **Commonwealth v. Toritto**, 67 A.3d 29 (Pa. Super. 2013) (*en banc*). Our standard of review is *de novo*, and our scope of review is plenary. **Commonwealth v. Walls**, 144 A.3d 926 (Pa. Super. 2016). In conducting our inquiry, we examine[,]

> whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, [is] sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence. For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.

**Commonwealth v. Trinidad**, 96 A.3d 1031, 1038 (Pa. Super. 2014) (quotation omitted).

**Commonwealth v. Rojas-Rolon**, 256 A.3d 432, 436 (Pa. Super. 2021), *appeal denied*, 285 A.3d 879 (Pa. 2022).

Presently, Appellant contends that the evidence was insufficient to sustain his PWID and PIC convictions because the Commonwealth failed to prove that he constructively possessed the drugs recovered from his vehicle. We have explained:

> Where a defendant is not in actual possession of the prohibited items, the Commonwealth must establish that the defendant had constructive possession to support the conviction. Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. We have defined constructive possession as conscious dominion, meaning that the

- 19 -

defendant has the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

It is well established that, as with any other element of a crime, constructive possession may be proven by circumstantial evidence. In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue. … [A] defendant's mere presence at a place where contraband is found or secreted is insufficient, standing alone, to prove that he exercised dominion and control over those items. Thus, the location and proximity of an actor to the contraband alone is not conclusive of guilt. Rather, knowledge of the existence and location of the contraband is a necessary prerequisite to proving the defendant's intent to control, and, thus, his constructive possession. If the only inference that the fact finder can make from the facts is a suspicion of possession, the Commonwealth has failed to prove constructive possession. It is well settled that facts giving rise to mere association, suspicion or conjecture, will not make out a case of constructive possession.

*Commonwealth v. Parrish*, 191 A.3d 31, 36–37 (Pa. Super. 2018) (cleaned up; spacing altered).

Instantly, Appellant compares his case to the facts of *Commonwealth v. Boatwright*, 453 A.2d 1058 (Pa. Super. 1982). There,

[t]he Commonwealth's evidence disclosed that, shortly after 10:00 p.m. on April 10, 1979, Officers Charles Roller and Annette Roebuck responded to a radio call concerning three "suspicious" men in an automobile parked in front of a residence in the Hazelwood section of Pittsburgh. Upon arriving at the location, Officer Roller observed [Boatwright], who was seated in the front passenger seat of the vehicle, "moving towards his left rear." The officer could not see [Boatwright's] hand or arm, only a movement of his body. Officer Roller then opened the door of the automobile and asked [Boatwright] to get out. He shined a light onto the left rear floor of the vehicle and saw a gun. In addition to [Boatwright], the car was occupied by the driver and another passenger who was seated in the left rear seat. The car was

registered to the driver's girlfriend and the gun to one Darlene Simpson.

*Id.* at 1058-59.  The ***Boatwright*** panel concluded that these facts failed to demonstrate Boatwright's constructive possession of the gun, as

[t]he only evidence other than mere presence was Officer Roller's testimony that [Boatwright] made a movement toward the left rear of the vehicle.  This evidence cannot provide proof beyond a reasonable doubt that [Boatwright] possessed the firearm in question.  Therefore, the conviction cannot be sustained.

*Id.* at 1059.

In the case *sub judice*, Appellant claims that,

just as in ***Boatwright***, the evidence produced at trial was insufficient to prove beyond a reasonable doubt that Appellant constructively possessed the contraband that was found in a bag in the car because the testimony at trial was that police never saw Appellant driving the car.  The car was registered to him, and he was walking near it, but a box truck blocked the officer from seeing whether Appellant actually went in the car.  Earlier in the day, officers were unable to see into the vehicle because of the vehicle's window tint.  Further, even the gun that Appellant dropped while running had someone else's DNA on it.  He was only a minor contributor, and it has someone else's DNA on it as the major contributor.  Accordingly, the Commonwealth's evidence showed that Appellant owned and was near a car that had contraband in it, but it failed to show that he was ever in that car or knew it had the contraband in it.  The evidence also showed that he ran because he had a gun on him without a license to carry and with a record that prohibited him from possessing a gun.  Therefore, even if the Court were to approve of the search of the car, the Court should find insufficient evidence that Appellant possessed the contraband in the car as the Commonwealth failed to show that he had exclusive access to it or was ever even in it.

Appellant's Brief at 34-35.

Appellant's arguments are unconvincing.  First, we have already concluded, for the reasons set forth *supra*, that there was sufficient

circumstantial evidence that Appellant was driving the car when it fled from Officers Smith and Kolb, and when Officer Ficchi stopped him, as nothing negated the reasonable inference that Appellant was driving the vehicle he owned. *See Glover*, 140 S.Ct. at 1186; *Jefferson*, 256 A.3d at 1249. The fact that Appellant owned the vehicle, was driving the vehicle, and was the only individual in or near the car in which the drugs were found, makes this case easily distinguishable from *Boatwright*. Furthermore, it was reasonable for the fact-finder to conclude that Appellant knew about the drugs inside the car, and exercised dominion and control over that contraband, due to the fact that he fled from police while driving the vehicle, and then parked the car and attempted to distance himself from the vehicle by quickly walking away from it. The totality of these circumstances were sufficient to prove that Appellant constructively possessed the drugs recovered from inside his vehicle to support his conviction for PWID. Additionally, as Appellant's only challenge to his PIC conviction is premised on his argument that he did not possess the drugs in the car, that claim fails, as well.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/06/2023

- 22 -