J-S40006-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER ROBERSON | : | |
| | : | |
| Appellant | : | No. 677 EDA 2023 |

Appeal from the Judgment of Sentence Entered March 1, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0007126-2021

BEFORE: NICHOLS, J., SULLIVAN, J., and COLINS, J.[*]

MEMORANDUM BY NICHOLS, J.: **FILED FEBRUARY 21, 2024**

Appellant Christopher Roberson appeals from the judgment of sentence imposed following his convictions for persons not to possess firearms, firearms not to be carried without a license, and carrying a firearm in public in Philadelphia.[1] On appeal, Appellant challenges the trial court's denial of his motion to suppress evidence and raises a challenge to evidentiary rulings made by the trial court during the suppression hearing. We affirm.

The underlying factual history of this matter are well known to the parties. In the instant case, Appellant was charged with multiple violations of the Uniform Firearms Act (VUFA) after police recovered a firearm from his waistband during an investigative detention. Prior to trial, Appellant filed a

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 6105(a)(1), 6106(a)(1), and 6108, respectively.

motion to suppress the firearm in which he claimed that police had neither reasonable suspicion nor probable cause to seize the firearm.

Following a suppression hearing on September 29, 2022, the trial court set forth the following findings of fact:

> [Philadelphia Police Officer Zachary Zgleszewski] testified that on June 25, 2021 at approximately 1:15 p.m. he was on duty in an unmarked patrol vehicle in the area of 4400 North Gratz Street. The officer testified that it was his understanding that Police Officer [] Levitt relayed information to him from a Police Officer Ajerio, and it was Police Officer Ajerio who told Police Officer Levitt that [Appellant] was in the area of 4400 North Gratz Street in a Chicago Bulls shirt.[2] At that time this officer, as well as [] Officers Levitt, Baker, and Stout began looking and surveilling the area for an individual matching that description. In the area of 4400 North Gratz, the officer testified that he saw a large crowd of approximately 50 people, as well as [Appellant] in a Bulls jersey on the sidewalk holding a child.
>
> * * *
>
> [T]he crowd is made primarily at that time of women that are around [Appellant], and [Appellant] is towards to back of that crowd holding a child who looks approximately around the age of two.
>
> The officer starts to ask the individuals, the females there to move to the side. As he's doing that, [Appellant] begins handing off the child and begins moving his body away. As the officer says, don't do that, [Appellant] then takes off running, passing the child, frankly, nearly dropping the child, towards someone else and begins to flee. At that point there is a brief foot pursuit.
>
> [Officer Zgleszewski] indicated that he got hold of [Appellant], [] Officer Baker then tackled [Appellant], and [] Officer Baker is the

---

[2] During the suppression hearing, Officer Zgleszewski testified as follows: "Officer Levitt [] relayed information to me that he spoke with Officer Ajerio . . . . Officer Ajerio told him that [Appellant] was on 4400 North Gratz wearing a Chicago Bulls jersey and was armed with a firearm and was prohibited from carrying a firearm." N.T. Suppression Hr'g, 9/29/22, at 7.

individual who made the recovery in [Officer Zgleszewski's] presence of the silver and black Smith & Wesson [.]40 caliber [firearm] with 14 live rounds in the front waistband area of [Appellant's] pants. . . .

[Officer Zgleszewski] also testified that the areas of 4400 North Gratz, 4500 North Gratz, as well as 19th Street to 17th Street at Wingohocking [Street] is a high crime area with a permanent car assigned to it due to numerous shootings, homicides, and drug sales.

N.T. Suppression Hr'g, 9/29/22, at 20-22 (some formatting altered).

At the conclusion of the suppression hearing, the trial court denied Appellant's motion to suppress evidence. Ultimately, following a stipulated bench trial, the trial court found Appellant guilty of the above-referenced offenses. On March 1, 2023, the trial court imposed an aggregate sentence of eleven months and fifteen days to twenty-three months' incarceration, to be followed by three years' probation. Appellant filed timely post-sentence motions, which the trial court subsequently denied.

Appellant filed a timely notice of appeal[3] and a court-ordered Pa.R.A.P. 1925(b) statement. In lieu of a Rule 1925(a) opinion, the trial court wrote a

_____

[3] The record reflects that the trial court denied Appellant's post-sentence motions on March 10, 2023. On March 7, 2023, Appellant filed a premature notice of appeal, purporting to appeal from the trial court's September 29, 2022 order denying Appellant's motion to suppress evidence. It is well settled that "a direct appeal by a defendant in a criminal proceeding lies from the judgment of sentence." *Commonwealth v. Pratt*, 930 A.2d 561, 562 n.1 (Pa. Super. 2007). Pursuant to Pa.R.A.P. 905(a)(5), we shall treat Appellant's notice of appeal as filed after the entry of the March 10, 2023 order denying Appellant's post-sentence motions. *See Commonwealth v. Cooper*, 27 A.3d 999, 1008 (Pa. 2011).

letter to this Court addressing Appellant's suppression claim.[4]

Appellant raises the following issues for our review:

1. Whether the trial court abused its discretion in denying Appellant's pre-trial motion to suppress physical evidence in finding there was reasonable suspicion and/or probable cause to stop, detain, arrest, and subsequently search Appellant's person[?]

2. Whether the trial court erred in sustaining the Commonwealth's objections to defense counsel's inquiry into the constitutional classification of the encounter with Appellant?

Appellant's Brief at 3-4 (some formatting altered).

In his first issue, Appellant challenges the trial court's denial of his motion to suppress. *Id.* at 10. Specifically, Appellant claims that Officer Zgleszewski "was unable to offer any testimony that presented articulable facts which supported the reasonable suspicion to stop and seize Appellant." *Id.* at 12. In support, Appellant argues that Officer Zgleszewski relied solely on a tip from other police officers and "did not conduct any form of an independent investigation." *Id.* at 13 (citing **Commonwealth v. Queen**, 639 A.2d 443 (Pa. 1994) (holding that a police officer failed to articulate reasonable suspicion because he relied solely on a tip from another officer

_____

[4] We note that Hon. Mia Roberts Perez presided over Appellant's suppression hearing and imposed the instant judgment of sentence. Judge Perez was nominated for the United States District Court for the Eastern District of Pennsylvania by President Joseph R. Biden on July 12, 2022, and was confirmed by the United States Senate on December 7, 2022. **See** 168 Cong. Rec. S3244 (daily ed. July 12, 2022); 168 Cong. Rec. S7017 (daily ed. Dec. 7, 2022). Prior to her resignation from the Philadelphia County Court of Common Pleas, Judge Perez sent a letter to this Court addressing the claims raised in Appellant's Rule 1925(b) statement.

identifying the defendant as a suspect without any articulable facts justifying the identification). Appellant also asserts that neither Officer Zgleszewski's testimony nor the body cam footage support the trial court's finding that Appellant attempted to flee when officers arrived. Appellant's Brief at 18. In any event, Appellant argues that even if his actions could be considered "flight," there was insufficient evidence establishing that police had reasonable suspicion. *Id.* at 19.

The Commonwealth responds that **Queen** is distinguishable from the instant case, as Officer Zgleszewski and his colleagues "did not rely exclusively on the unverified hunch of another officer." Commonwealth's Brief at 13.

In reviewing the denial of a motion to suppress, our standard of review:

> is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where, . . . the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

**Commonwealth v. Lear**, 290 A.3d 709, 715 (Pa. Super. 2023) (citations omitted), *appeal granted on other grounds*, 305 A.3d 541 (Pa. 2023).

It is well settled that "Article I, [Section] 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution both protect the people from unreasonable searches and seizures. Jurisprudence

arising under both charters has led to the development of three categories of interactions between citizens and police." ***Commonwealth v. Lyles***, 97 A.3d 298, 302 (Pa. 2014) (citations omitted).

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

***Commonwealth v. Pakacki***, 901 A.2d 983, 987 (Pa. 2006) (citations omitted).

> [T]o establish grounds for reasonable suspicion, the officer must articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. The question of whether reasonable suspicion existed at the time the officer conducted the stop must be answered by examining the totality of the circumstances to determine whether the officer who initiated the stop had a particularized and objective basis for suspecting the individual stopped. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of the stop warrant a man of reasonable caution in the belief that the action taken was appropriate.

***Commonwealth v. Basinger***, 982 A.2d 121, 125 (Pa. Super. 2009) (citations omitted and some formatting altered).

It is well settled that when determining whether a seizure has taken place, a court must apply an objective test:

[T]o guide the crucial inquiry as to whether or not a seizure has been effected, the United States Supreme Court has devised an objective test entailing a determination of whether, in view of all surrounding circumstances, a reasonable person would have believed that he was free to leave. In evaluating the totality of the circumstances, our focus is whether, by means of physical force or show of authority, the citizen-subject's movement has in some way been restrained. In making this determination, no single factor dictates the ultimate conclusion as to whether a seizure has occurred.

*Commonwealth v. Green*, 298 A.3d 1158, 1163 (Pa. Super. 2023) (citations omitted and some formatting altered).

Our Supreme Court has held that mere possession of a firearm is insufficient to support reasonable suspicion "[u]nless a police officer has prior knowledge that a specific individual is not permitted to carry a concealed firearm, and absent articulable facts supporting reasonable suspicion that a firearm is being used or intended to be used in a criminal manner[.]" *Commonwealth v. Hicks*, 208 A.3d 916, 937 (Pa. 2019).

However, the *Hicks* Court explained:

A police officer is trained to assess people and situations for danger. An officer responding to a dispatch . . . is capable of responding in a manner not amounting to a seizure by observing the suspect and the circumstances, by determining whether anyone appears to be in danger or whether a crime appears to be occurring, and by interviewing witnesses about any crimes that may have occurred before the officer's arrival. *See* [*Commonwealth v. Jackson*, 698 A.2d 571, 575 (Pa. 1997)] (reasoning that, where the available information does not give rise to reasonable suspicion, "the police must investigate further by means not constituting a search and seizure."). Such activities preserve peace, law, and order, and do so without depriving anyone of his freedom unless there is cause to do so.

*Id.* at 946.

Our Supreme Court has held that unprovoked flight in a high crime area is sufficient to create reasonable suspicion under the Fourth Amendment. *In re D.M.*, 781 A.2d 1161, 1164 (Pa. 2001) (applying *Illinois v. Wardlow*, 528 U.S. 119 (2000)); *see also Commonwealth v. Barnes*, 296 A.3d 52, 58 (Pa. Super. 2023) (reiterating that "unprovoked flight in a high crime area is sufficient to create a reasonable suspicion" and that "[w]hile additional facts may negate reasonable suspicion, *Wardlow* requires no additional facts to establish reasonable suspicion" (citations omitted)); *Commonwealth v. Dunham*, 203 A.3d 272, 278 (Pa. Super. 2019) (stating that although "flight alone is insufficient" to establish reasonable suspicion and that "unprovoked flight from police **in a high-crime area** is sufficient to create reasonable suspicion for police pursuit and will not warrant suppression" (citation omitted and emphasis added)).

As noted previously, Appellant relies on *Queen* in support of his assertion that Officer Zgleszewski did not have probable cause to effectuate a seizure.

In *Queen*, a police officer conducted a stop and frisk of the defendant solely based on a detective's comment that the defendant resembled a male wanted for robbery. *Queen*, 639 A.2d at 444. After recovering a firearm from the defendant's waistband, the officer placed him under arrest. *Id.* The defendant subsequently filed a suppression motion and the trial court conducted a hearing. *Id.* After hearing testimony from the police officer, the trial court denied the motion to suppress. *Id.* On appeal, the Pennsylvania

Supreme Court concluded that the suppression court erred in denying the defendant's motion because it was the detective, rather than the arresting officer, who possessed the information which formed the basis for the seizure. *Id.* at 445-46.

In reaching that conclusion, the ***Queen*** Court explained that

[t]o hold otherwise would permit the government to bypass the protections of the Fourth Amendment and Article I, Section 8, of the Pennsylvania Constitution by always having a second police officer summoned for assistance for the purpose of making the inquiry of a suspect on the basis of an initial police officer's suspicion. At no time would the government have to establish any articulable facts, thus completely emasculating the protections against illegal searches and seizures.

*Id.* at 445.

In the instant case, Officer Zgleszewski testified that he initially began patrolling the area with two other officers after receiving information from Officer Levitt, who indicated that Appellant was reportedly "on 4400 North Gratz wearing a Chicago Bulls jersey and was armed with a firearm and was prohibited from carrying a firearm." N.T. Suppression Hr'g at 7. Officer Zgleszewski described 4400 North Gratz Street as a high crime area, with "numerous shootings, homicides, [and] drug sales." *Id.* at 10. Officer Zgleszewski testified that after he arrived at the scene, Appellant saw the police officers, then immediately attempted to flee. *Id.* at 8.

At the conclusion of the suppression hearing, the trial court explained:

While I understand the basis of [Appellant's] argument that this is analogous to ***Queen***, I think there are several circumstances happening here. There are elements of this that absolutely mimic

that of **Queen**; however, in this particular case we have the added interactions between the officers and [Appellant], in particular that before the officers even fully approach or address [Appellant, Appellant] begins making movements away from the officer. Again, as [the trial court] will emphasize, holding a child and almost dropping the child as he's passing, tossing the child to another person, and he begins his flight.

Based on all of that, I do believe that [Appellant's] flight was irrespective of just the information that was provided to these officers regarding the individual in the Bulls shirt. There [are] additional elements here. **The officers could not even get to the next layer before [Appellant] started attempting to flee in a high crime area.**

Additionally, I think there is some argument to be made that this would be almost similar to that of an anonymous radio call followed by the extra layer of flight in a high crime area.

Because of that, I am going to deny [Appellant's] motion to suppress.

N.T. Suppression Hr'g at 22-23.

Based on our review of the record, we conclude that the trial court's factual findings are supported by the record, and we discern no error in the trial court's legal conclusions. **See Lear**, 290 A.3d at 715. As noted previously, the trial court credited Officer Zgleszewski's testimony that Appellant attempted to flee when the officers began to approach the scene, which was located in a high crime area. **See** N.T. Suppression Hr'g at 22. Therefore, we agree with the trial court's conclusion that Officer Zgleszewski had reasonable suspicion to seize Appellant. **See Hicks**, 208 A.3d at 937; **Queen,** 639 A.2d at 445-46.

Further, unlike in **Queen** and **Hicks**, Officer Zgleszewski relied on a combination of factors in developing reasonable suspicion, which included

Appellant's unprovoked flight in a high crime area and the report from other officers which indicated that Appellant was in the area of 4400 North Gratz Street wearing a Chicago Bulls jersey and was armed with a firearm that he was prohibited from carrying. **See** N.T. Suppression Hr'g at 7. **Cf. Hicks**, 208 A.3d at 937; **Queen,** 639 A.2d at 445-46. Under the totality of these circumstances, the trial court properly concluded that Officer Zgleszewski had reasonable suspicion. **See Dunham**, 203 A.3d at 278. Accordingly, Appellant is not entitled to relief.

### Scope of Cross-Examination

In his second issue, Appellant contends that the trial court erred when it sustained the Commonwealth's objections during Appellant's cross-examination of Officer Zgleszewski. Appellant's Brief at 19-20. Specifically, Appellant argues that the trial court erred by precluding Appellant from eliciting testimony from Officer Zgleszewski regarding his subjective view of the type of interaction he had with Appellant. **Id.** at 22-23. Appellant further argues that, had he been permitted to pursue that line of questioning, Officer Zgleszewski would have confirmed that Appellant "was not free to leave and/or was to be detained pending an investigation[.]" **Id.** at 23.

The Commonwealth responds that the testimony at issue was not relevant and therefore, the trial court did not err when it sustained the Commonwealth's objections. Commonwealth's Brief at 16.

We review a trial court's evidentiary rulings for an abuse of discretion. **Commonwealth v. Luster**, 234 A.3d 836, 838 (Pa. Super. 2020). It is well

settled that "[a]n abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." **Commonwealth v. Santos**, 176 A.3d 877, 882 (Pa. Super. 2017) (citation omitted).

The Pennsylvania Rules of Evidence state that "[a]ll relevant evidence is admissible," while "[e]vidence that is not relevant is not admissible." Pa.R.E. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401.

As noted above, this Court employs an objective test to determine whether a seizure has taken place. **See Green**, 298 A.3d at 1163. This Court has further held:

> [T]he officer's subjective views are as immaterial to the objective standard as are [the defendant's]. **See Commonwealth v. Lagana**, 537 A.2d 1351, 1355 n.4 (Pa. 1988) (citation omitted) ("The test of when a person is arrested is an objective one and depends upon the reasonable impression conveyed to the person seized and not the subjective view of the officers or the person being seized.").

**Commonwealth v. Thomas**, 273 A.3d 1190, 1201-02 (Pa. Super. 2022), (quoting **Lyles**, 97 A.3d at 307 n.6) (some formatting altered), *appeal denied* 283 A.3d 793 (Pa. 2022). The **Lyles** Court further held that whether a seizure occurs is a question of law. **Lyles**, 97 A.3d at 302.

Here, at the suppression hearing, the following exchange occurred during Appellant's cross-examination of Officer Zgleszewski:

**Q:** All right. Now, when you approach [Appellant], as you saw in the video, you would agree with me that Officer Baker, upon I guess getting through the young ladies in the crowd, says, don't move, correct?

**A:** Yeah, as he's beginning to shuffle.

[The Commonwealth]: **I'm going to object, it goes to the ultimate question here, it's a finding of law.**

The Court: Sustained.

**Q:** Is [Appellant] at that point, is he being detained?

[The Commonwealth]: Objection; same grounds.

The Court: Sustained.

**Q:** Are you attempting or your brother officers attempting to seize him to perform a frisk?

[The Commonwealth]: Objection.

The Court: Sustained. Rephrase, Counsel.

**Q:** What is your intention in this video? We saw the video, you're on scene, what is you[sic] and your brother officers' intention at the point that you encounter [Appellant]?

**A:** To talk to him and ask him if he had a firearm, if he does, do you have a permit to carry.

**Q:** Sure. And that's what you classify as a mere encounter; correct, sir?

**A:** Correct.

**Q:** And you would agree with me that if it's a mere encounter, he certainly would be free to leave; right?

[The Commonwealth]: Objection.

The Court: Sustained.

N.T. Suppression Hr'g at 14-15 (some formatting altered and emphasis added).

Based on our review of the record, we discern no abuse of discretion by the trial court in sustaining the Commonwealth's objection to Appellant's line of questioning. *See Luster*, 234 A.3d at 838. As noted above, we apply an objective standard when determining whether a seizure has occurred. *See Green*, 298 A.3d at 1163. Therefore, Officer Zgleszewski's subjective views on his interaction with Appellant were "immaterial to the objective standard." *See Thomas*, 273 A.3d at 1201 (quoting *Lyles*, 97 A.3d at 307 n.6). Accordingly, Appellant is not entitled to relief on this issue. For these reasons, we affirm.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/21/2024